In the United States Court of Appeals
for the Sixth Circuit

———————

# United States of America,

Plaintiff-Appellant,

v.

# Edward Dale et al.,

Defendants-Appellees.

———————

On Appeal from the United States District Court
for the Eastern District of Michigan
No. 92-81127 (Hon. David M. Lawson)

———————

## Brief for the United States

———————

Dawn N. Ison
United States Attorney

Jessica Currie
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
jessica.currie@usdoj.gov

# Table of Contents

Table of Authorities ........................................................................ iv

Request for Oral Argument ............................................................ viii

Jurisdictional Statement .................................................................. 1

Introduction ...................................................................................... 2

Issues Presented ................................................................................ 4

Statement of the Case ...................................................................... 5

A. The defendants murder more than a half dozen people ................. 5

B. The defendants are convicted as charged and sentenced to concurrent life terms. ...................................................................... 7

C. The defendants move to reduce their sentences, including under Section 404 of the First Step Act ........................................... 9

D. The district court issues an order on Section 404 eligibility and schedules "plenary resentencing" hearings. .......................... 12

E. The government opposes any sentence reduction under Section 404. .................................................................................... 13

F. The district court dramatically reduces the defendants' life sentences, including for their non-covered homicides. ............... 15

Summary of the Argument ............................................................ 19

Argument .......................................................................................... 21

I.   The district court did not have the authority under Section 404 of the First Step Act to impose reduced sentences for the defendants' non-covered homicides. ........................................21

    A.   The only covered offense in this case is the drug conspiracy. ...........................................................................21

    B.   The defendants' non-covered homicide sentences were not eligible for relief because they were not part of an intertwined sentencing package with the covered drug offense. ................................................................................24

    C.   The government repeatedly argued that the homicide sentences were not eligible for a reduction—including in its prehearing memorandum—and did not "forfeit" those arguments. ....................................................................33

    D.   Concluding that Gordon's murder sentence was eligible for relief violated the mandate rule. ........................36

II.  Regardless of eligibility, the district court abused its discretion in dramatically reducing the life sentences here. ........39

    A.   The guideline ranges and statutory penalties for the defendants' offenses have not changed in any material respect. ...................................................................................39

    B.   The district court's reasoning did not justify significant below-guideline variances for the defendants' murder sentences. ...........................................42

    C.   The reductions here do not align with Section 404's purpose of reducing the crack-to-powder disparity in sentencing. ..............................................................................49

    D.   Reducing Gordon's murder sentence to less than time served was an abuse of discretion. .......................................50

Conclusion ...............................................................................53

Certificate of Compliance with Rule 32(a)..............................54

Certificate of Service ..............................................................55

Relevant District Court Documents.........................................56

# Table of Authorities

**Cases**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) .................................. 40, 41

*Concepcion v. United States*, 142 S. Ct. 2389 (2022) ..................... passim

*Dillon v. United States*, 560 U.S. 817 (2010) ......................................... 32

*Gall v. United States*, 552 U.S. 38 (2007) ........................................ 41, 42

*Henderson v. United States*, 568 U.S. 266 (2013) ................................. 34

*In re Purdy*, 870 F.3d 436 (6th Cir. 2017) ............................................. 36

*Sanchez v. United States*, No. 01-cr-74-2, 2021 WL 5234978
    (S.D.N.Y. Nov. 10, 2021) ................................................................. 27

*Terry v. United States*, 141 S. Ct. 1858 (2021) ...................................... 21

*United States v. Alexander*, 951 F.3d 706 (6th Cir. 2019) ...................... 21

*United States v. Atkinson*, No. 19-1678, 2019 WL 11705979
    (6th Cir. Dec. 17, 2019) ................................................................... 23

*United States v. Baptiste*, 834 F. App'x 547 (11th Cir. 2020) ................ 24

*United States v. Bass*, 17 F.4th 629 (6th Cir. 2021) ................... 39, 43, 49

*United States v. Booker*, 543 U.S. 220 (2005) ....................................... 41

*United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020) ....................... 21

*United States v. Bowens*, 938 F.3d 790 (6th Cir. 2019) .......................... 33

*United States v. Braden*, No. 21-5449, 2022 WL 4393186
    (6th Cir. Sept. 23, 2022) ................................................................. 25

*United States v. Brown*, No. 97-1618,
    2000 WL 876382 (6th Cir. 2000) ...................................................... 9

**Cases**

*United States v. Butler*, 805 F. App'x 365 (6th Cir. 2020) ...................... 31

*United States v. Chambers*, No. 21-1331, 2022 WL 612805
(Mar. 2, 2022) ............................................................. 25

*United States v. Conatser*, 514 F.3d 508 (6th Cir. 2008) ...................... 47

*United States v. Contrell Smith*, Nos. 20-1833/21-1218,
2022 U.S. App. LEXIS 1103 (6th Cir. Jan. 13, 2022) .................. 26

*United States v. Curtis*, 66 F.4th 690 (7th Cir. 2023) .................... passim

*United States v. Foreman*, 958 F.3d 506 (6th Cir. 2020) ...................... 35

*United States v. Gee*, 843 F. App'x 215 (11th Cir. 2021) ...................... 23

*United States v. Gladney*, 44 F.4th 1253 (10th Cir. 2022) .................... 24

*United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021) ............. 10

*United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020) ................... 29, 30

*United States v. Hebeka*, 89 F.3d 279 (6th Cir. 1996) ........................... 38

*United States v. Hible*, 13 F.4th 647 (7th Cir. 2021) .............................. 32

*United States v. Hudson,* 967 F.3d 605 (7th Cir. 2020) ........ 24, 25, 26, 29

*United States v. Hunter*, 12 F.4th 555 (6th Cir. 2021) ........................... 31

*United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020) ......................... 51

*United States v. Jenkins*, 50 F.4th 1185 (D.C. Cir. 2022) ..................... 30

*United States v. Martin*, 974 F.3d 124 (2d Cir. 2020) ........................... 27

*United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021) ................... 29, 30

*United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc) ......... 30

**Cases**

*United States v. McFalls*, 675 F.3d 599 (6th Cir. 2012) .......................... 34

*United States v. McSwain*, 25 F.4th 533 (7th Cir. 2022) ...................... 22

*United States v. Mendez*, 498 F.3d 423 (6th Cir. 2007) .......................... 36

*United States v. Nichols*, 897 F.3d 729 (6th Cir. 2018) .......................... 51

*United States v. O'Dell*, 320 F.3d 674 (6th Cir. 2003) ...................... 36, 37

*United States v. Parks*, 700 F.3d 775 (6th Cir. 2012) ............................ 36

*United States v. Peoples*, 41 F.4th 837 (7th Cir. 2022) .......................... 30

*United States v. Polk*, No. 96-1492, 1999 WL 397922
(6th Cir. Jun. 2, 1999) ...................................................................... 9

*United States v. Prater*, 766 F.3d 501 (6th Cir. 2014) ........................... 33

*United States v. Shannonhouse*, No. 07-289,
2019 WL 3426328 (W.D. Pa. July 30, 2019) .................................. 51

*United States v. Smith*, 959 F.3d 701 (6th Cir. 2020) ........................... 50

*United States v. Snow*, 967 F.3d 563 (6th Cir. 2020) ...................... 10, 23

*United States v. Sumler*, No. 95-154-2 (BAH),
2021 WL 6134594 (D.D.C. Dec. 28, 2021) ............................... 27, 28

*United States v. Turnley*, 627 F.3d 1032 (6th Cir. 2010) .......................... 1

*United States v. Ware*, 964 F.3d 482 (6th Cir. 2020) ............................. 50

*United States v. Winters*, 986 F.3d 942 (5th Cir. 2021) ......................... 22

*United States v. Woods*, 61 F.4th 471 (6th Cir. 2023) ...................... 34, 35

*United States v. Young*, 998 F.3d 43 (2d Cir. 2021) .............................. 24

## Statutes

18 U.S.C. § 3231 ...................................................................1

18 U.S.C. § 3553(a)............................................................ passim

18 U.S.C. § 3582(c)(1)(B) ......................................... 21, 31, 35

18 U.S.C. § 3742(b) .............................................................1

21 U.S.C. §  841(b)(1) ........................................................21

21 U.S.C. §  848(e) ........................................................ passim

21 U.S.C. §  924(c) ........................................................ passim

28 U.S.C § 1291 ...................................................................1

28 U.S.C. § 2255 ................................................................11

Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010) ................................................................. *passim*

First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018) ............................................. *passim*

## Guidelines

USSG § 2A1.1 ................................................................8, 28

USSG § 2D1.1(d)(1) ...........................................................8

USSG § 3D1.2..........................................................8, 27, 28

# Request for Oral Argument

This appeal raises issues of first impression concerning sentence reductions under Section 404 of the First Step Act of 2018. The issues are of great consequence—four convicted murderers have now been released from prison or had their life sentences dramatically reduced by several decades. The government therefore requests oral argument.

# Jurisdictional Statement

The government appeals the amended judgments of defendants Gregory Brown, Edward Dale, John Gordon, and Gene Polk. The district court had jurisdiction under 18 U.S.C. § 3231 because this case involves offenses in violation of "the laws of the United States." Dale's amended judgment was entered on December 13, 2022. (R.2579: Dale Amendment Judgment, 21008). Polk's and Brown's amended judgments were entered on December 21, 2022. (R.2585: Polk Amendment Judgment, 21045; R.2582: Brown Amended Judgment, 21022). And Gordon's amended judgment was entered on December 22, 2022. (R.2584: Gordon Amended Judgment, 21040). The government filed timely notices of appeal. (R.2588: Dale Notice of Appeal, 21126; R.2590: Polk Notice of Appeal, 21128; R.2592: Brown Notice of Appeal, 21130; R.2591: Gordon Notice of Appeal, 21129). The government also obtained the Acting Solicitor General's written appeal authorizations, as required under *United States v. Turnley*, 627 F.3d 1032 (6th Cir. 2010). Accordingly, this Court has appellate jurisdiction under 28 U.S.C § 1291 and 18 U.S.C. § 3742(b).

# Introduction

Section 404 of the First Step Act of 2018 permits retroactive sentence reductions for crack offenders, not contract killers. The defendants here worked as enforcers for a violent drug-trafficking gang known as the "Best Friends." Combined, they are responsible for at least seven premeditated murders. A jury found the defendants guilty as charged. The district court sentenced them to concurrent life terms on their murder convictions, in addition to their drug-conspiracy offense. And the district court repeatedly rejected their collateral attacks or requests for sentence reductions on those counts.

After the case was transferred to a new district judge, however, the newly assigned judge reversed course. Seizing on the fact that the defendants were convicted of a drug conspiracy involving both powder and crack cocaine, which is a "covered offense" under Section 404, the district court declared that it had the authority to conduct a plenary resentencing on all counts. Over the government's objection, the district court then reduced *all* of the defendants' life sentences—including for their non-covered homicide offenses—in most instances down to the statutory minimum of just 20 years.

No court of appeals has permitted a district judge to reduce murder sentences under Section 404, and this Court should not be the first. Even the most permissive circuit allows reduced sentences on non-covered offenses only when those offenses formed an intertwined sentencing package with a covered crack offense. The defendants' non-covered homicide sentences do not qualify under that test because they did not hinge, in any respect, on the sentences imposed for the covered drug conspiracy. In any event, nothing about this case justified the newly assigned judge's decision to grant drastic below-guideline variances to all four defendants—who collectively murdered at least seven people—using a narrow crack-sentence-reduction provision as a hook. The district court exceeded its statutory authority and abused its discretion. This Court should reverse.

## Issues Presented

I.      Did the district court have authority under Section 404 of the First Step Act to impose reduced sentences for the defendants' non-covered homicide offenses?

II.      Regardless of eligibility, did the district court abuse its discretion in dramatically reducing the defendants' life sentences for murder, particularly given the seriousness of those offenses?

# Statement of the Case

## A.    The defendants murder more than a half dozen people.

For over a decade, the Best Friends gang was one of the largest crack and powder cocaine distributors in Detroit. (Gordon PSR ¶ 8; Brown PSR ¶ 10; Dale PSR ¶ 5; Polk PSR ¶ 7). Its operations eventually extended to nine other states, sometimes shifting locations to avoid federal investigation. (Gordon PSR ¶¶ 8, 17–18, 23). Known for their ruthless killings, members were expected to protect the gang's territory and eliminate competition with contract murders and drive-by shootings. (Gordon PSR ¶ 9; Brown PSR ¶ 11; Dale PSR ¶ 6; Polk PSR ¶ 8). The gang also used murder as retribution against those who failed to repay their drug debts. (Gordon PSR ¶ 9; Brown PSR ¶ 11; Dale PSR ¶ 6; Polk PSR ¶ 8).

As expected of them, the defendants here, as distributors and enforcers of the Best Friends, committed brutal killings to promote the gang's interests. (Gordon PSR ¶ 14; Brown PSR ¶ 15; Dale PSR ¶ 11; Polk PSR ¶ 13). Together, they murdered at least seven people.

Gregory Brown aided and abetted the murder of Walter Daniels. (Brown PSR ¶ 28). After spotting Daniels going into a store, Brown,

armed with a gun, entered the store and followed Daniels outside. (Brown PSR ¶ 28). Edward Dale then carried out the execution by shooting Daniels 16 times. (Brown PSR ¶ 28; Dale PSR ¶ 22). The men reportedly shared $20,000 for carrying out the hit. (Brown PSR ¶ 28; Dale PSR ¶ 22). At the time, Brown was on parole for a previous firearm offense and had recently been released from a halfway house. (Brown PSR ¶¶ 50–52).

Dale, in addition to murdering Daniels, shot and killed Al Foster, who the Best Friends suspected was cooperating with authorities. (Dale PSR ¶ 20). Dale also shot and killed Michael Mitchell, a rival drug dealer, and shared in the murder payment of $30,000 and a kilogram of cocaine. (Dale PSR ¶ 21). And when other Best Friends murdered the gang's leader to take over the organization, Dale helped cover it up by removing the body and destroying the evidence. (Gordon PSR ¶ 22).

Gordon shot and killed Dwight Farrell at a used car lot. (Gordon PSR ¶ 27). Two other people were wounded in the altercation. (Gordon PSR ¶ 27). Gordon also tried to kill Michael Mitchell, whom Dale later murdered. (Gordon PSR ¶¶ 28–29). And Gordon participated in Daniels's murder too. (Gordon PSR ¶¶ 29–30).

Gene Polk murdered William Miles in an incident that involved a police shoot-out. (Polk PSR ¶ 23). Polk later shot and killed George Mason, a rival drug dealer. (Polk PSR ¶ 24). Polk also shot and killed Sidney Edwards, who previously witnessed Polk kill yet another rival drug dealer, Bernard Lamar. (Polk PSR ¶¶ 22, 25).

Meanwhile, the defendants were trafficking drugs. Brown made weekly deliveries of between 1 and 4.5 ounces of crack for six or seven months and received a kilogram or more of cocaine on at least three occasions. (Brown PSR ¶¶ 30–31). Dale and Gordon also received kilogram quantities of cocaine to distribute. (Dale PSR ¶ 16; Gordon PSR ¶ 19). Gordon, while in New York, received shipments ranging from 93 to 498 kilograms of cocaine. (Gordon PSR ¶ 23). Polk sold crack for years, opened crack houses for the gang, and was present when another distributor purchased two kilograms of crack. (Polk PSR ¶ 26).

**B.    The defendants are convicted as charged and sentenced to concurrent life terms.**

All four defendants were tried by a jury. Brown was convicted of a drug conspiracy involving powder and crack cocaine, one murder under 21 U.S.C. § 848(e), and one § 924(c) offense. (Brown PSR ¶¶ 1–3, 8). Dale was convicted of the drug conspiracy, three murders, and two

§ 924(c) offenses. (Dale PSR ¶¶ 1, 3). Gordon was convicted of the drug conspiracy, one murder, and one § 924(c) offense. (Gordon PSR ¶¶ 1, 6). Polk was convicted of the drug conspiracy, three murders, and three § 924(c) offenses. (Polk PSR ¶¶ 1, 5).

At sentencing, the defendants' guideline ranges for the drug conspiracy and the § 848(e) killings were driven by their most serious conduct—the homicides—and were not influenced by drug quantity. USSG §§ 2A1.1(a), § 2D1.1(d)(1). Because each homicide involved an identifiable victim, those counts were not subject to the grouping rules. USSG § 3D1.2. As a result, the guideline ranges were life in prison for the drug conspiracy and each § 848(e) homicide, plus consecutive terms under § 924(c). (*See, e.g.*, Polk PSR ¶¶ 31, 38, 58–72, 100).

As then mandated, the district court imposed guideline sentences:

| | |
|---|---|
| Brown: | two concurrent life terms (drug conspiracy and one homicide) plus 5 years (one § 924(c) offense) |
| Dale: | four concurrent life terms (drug conspiracy and three homicides) plus 25 years (two § 924(c) offenses) |
| Gordon: | two concurrent life terms (drug conspiracy and one homicide) plus 5 years (one § 924(c) offense) |
| Polk: | four concurrent life terms (drug conspiracy and three homicides) plus 45 years (three § 924(c) offenses) |

(*See, e.g.*, R.1368: Gordon Original Judgment, 14184). This Court affirmed those sentences on direct appeal. *United States v. Polk*, No. 96-1492, 1999 WL 397922 (6th Cir. Jun. 2, 1999); *United States v. Brown*, No. 97-1618, 2000 WL 876382 (6th Cir. 2000).

**C.** **The defendants move to reduce their sentences, including under Section 404 of the First Step Act.**

A long history of post-conviction litigation ensued. In 2019, each defendant moved for relief under the Section 404 of the First Step Act of 2018, which allows prisoners to seek a sentence reduction if they were convicted of a "covered offense," the penalties for which were modified by the Fair Sentencing Act of 2010. (R.2362: Brown Section 404 Motion, 17422; R.2365: Dale Section 404 Motion, 17457; R.2359: Gordon Section 404 Motion, 17356; R.2366: Polk Section 404 Motion, 17472).

The district court denied relief for Gordon and Brown, but it did not rule as to Polk or Dale. (R.2372: Order Denying Gordon Section 404 Motion, 17570; R.2386: Order Denying Brown Section 404 Motion, 17663). Gordon appealed. (R.2376: Gordon Notice of Appeal, 17634). Brown moved to reconsider. (R.2391: Brown Motion to Reconsider, 17726–35). While those filings were pending, the original district judge retired, and the entire case was assigned to a new judge.

9

The newly assigned judge did not immediately address the pending Section 404 filings, but instead ruled on Gordon's compassionate-release motion. The district court denied that motion, concluding that the § 3553(a) factors did not support a sentence reduction. (R.2425: Order Denying Gordon Compassionate Release, 19000). In doing so, the district court described Gordon's crimes as "perhaps the most serious known to the law," and emphasized that their serious nature was not diminished by his health problems or the passage of time. (R.2425: Order Denying Gordon Compassionate Release, 18996–97). It found Gordon's prison conduct "commendable" but also "unremarkable," and that his life sentences were "not greater than necessary to achieve congressional goals" of sentencing. (R.2425: Order Denying Gordon Compassionate Release, 18997).

This Court then decided Gordon's Section 404 appeal. The panel followed *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020), and held that an intentional killing under § 848(e) is not a covered offense. (Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), p. 3). But it held that Gordon was eligible for relief "on Count 1," the drug conspiracy, and concluded that a reduction on that count might

benefit Gordon if his life sentence on the homicide count were set aside as a result of a then-pending collateral attack under 28 U.S.C. § 2255. (*Id.*, pp. 3–4). The panel thus vacated the district court's order denying Gordon's Section 404 motion—but only as to the drug conspiracy. (*Id.*, p. 4). The panel's limited remand order reflects its narrow ruling: "[W]e VACATE, only as to Count 1, the district court's order denying Gordon's motion for a sentence reduction under [Section 404] and REMAND for further proceedings." (*Id.*, p. 4).

Meanwhile, Dale and Brown also sought compassionate release, both unsuccessfully. Dale failed to establish extraordinary and compelling reasons for relief, and shortening his sentence was not justified given the seriousness of his crimes and the goals of sentencing. (R.2514: Order Denying Dale's Motion for Compassionate Release, 20182–83). Brown did not show extraordinary and compelling reasons either, and the district court denied his motion on that basis alone. (R.2541: Omnibus Order, 20538–40).

**D.     The district court issues an order on Section 404 eligibility and schedules "plenary resentencing" hearings.**

In July 2022, in the same order in which it denied compassionate release to Brown, the district court endorsed a broad theory of eligibility under Section 404. (R.2541: Omnibus Order, 20518–19). By then, about 18 months had passed since this Court's limited remand as to Gordon, and Section 404 motions "on nearly identical grounds" by Polk, Dale, and Brown remained pending. (R.2541: Omnibus Order, 20522).

The district court recognized that an intentional killing under § 848(e) is not a covered offense. (R.2541: Omnibus Order, 20530). Nonetheless, it decided that each defendant was "otherwise" eligible to have his "total sentence" reduced, even with respect to the non-covered homicide offenses, because "a covered offense is involved." (R.2541: Omnibus Order, 20530–31).

Given the passage of time, the district court requested updated presentence reports to evaluate the extent of any relief. (R.2541: Omnibus Order, 20538). On the view that Section 404 permits "plenary resentencing" on all counts, the district court scheduled resentencing hearings, to take place in December 2022. (R.2541: Omnibus Order, 20531; *see, e.g.*, R.2555: Dale Notice to Appear, 2064).

**E.    The government opposes any sentence reduction under Section 404.**

In its prehearing memorandum, the government argued that reducing the defendants' sentences was improper under Section 404. (R.2568: Prehearing Memorandum, 20622). Specifically, the government contended that the district court's authority to grant a sentence reduction under Section 404 was limited to the covered drug conspiracy and did not permit a sentence reduction on the non-covered homicides or the § 924(c) offenses because they did not form an intertwined sentencing package with the covered offense. (R.2568: Prehearing Memorandum, 20662–66). With respect to Gordon, the government also pointed to this Court's limited remand and argued that reducing Gordon's murder sentence would violate the mandate rule. (R.2568: Prehearing Memorandum, 20662–63).

Regardless of eligibility, the government argued that any sentence reduction would be improper considering the § 3553(a) factors. (R.2568: Prehearing Memorandum, 20652–79). As it explained, the guideline range for the drug conspiracy and each homicide was still life imprisonment, and granting relief to convicted murderers with long remaining sentences would not reflect the seriousness of their crimes,

promote respect for the law, provide just punishment, or afford adequate deterrence, among other considerations. (R.2568: Prehearing Memorandum, 20652–79).

The scope of the district court's authority under Section 404 was further debated at the December hearings. The government reiterated its argument that the mandate rule limited the relief available to Gordon. (R.2572: Gordon Hearing Tr., 20848–49). And for all four defendants, the government continued to argue that the non-covered homicides and § 924(c) offenses were not eligible for relief because they were not part of an aggregate sentence in which a covered offense had any influence. (R.2572: Gordon Hearing Tr., 20853–55; R.2571: Dale Hearing Tr., 20812–13, 20817; R.2587: Brown Hearing Tr., 21091–93; R.2586: Polk Hearing Tr., 21054–55).

The government also opposed relief under § 3553(a), arguing that it would be arbitrary to reduce the life sentences here—especially the murder sentences—because they had nothing to do with the crack-to-powder disparity that the Fair Sentencing Act sought to redress. (*See, e.g.*, R.2587: Brown Hearing Tr., 21104–105). As the government explained, the life sentences were based on murder, not drug quantity,

and the defendants should not receive a windfall, unavailable to other murderers, merely because they were also convicted of a conspiracy that involved crack. (*See, e.g.*, R.2586: Polk Hearing Tr., 21062).

**F.    The district court dramatically reduces the defendants' life sentences, including for their non-covered homicides.**

For the most part, the district court was unpersuaded. It first declared that the government had "forfeited" its eligibility arguments by including them in a prehearing memorandum and not in a motion to reconsider the court's previous order. (R.2572: Gordon Hearing Tr., 20869). Addressing those arguments anyway, the district court stood by its earlier reasoning that both covered and non-covered offenses could be reduced at a "plenary resentencing" under Section 404, and it did not interpret the remand order to prohibit a plenary resentencing for Gordon. (R.2572: Gordon Hearing Tr., 20867–69). But it agreed with the government that the consecutive terms under § 924(c) could not be reduced below what the law required when the defendants were originally sentenced. (R.2571: Dale Hearing Tr., 20829–30).

The district court then dramatically reduced the defendants' sentences, well below their respective guideline ranges and, in most instances, all the way down to the 20-year statutory minimum.

Gordon's two life sentences and Dale's four life sentences were reduced to 20 years each. (R.2572: Gordon Hearing Tr., 20873; R.2571: Dale Hearing Tr., 20837; R.2586: Polk Hearing Tr., 21082–83). Polk's three life sentences for murder were reduced to 25 years each, and his life sentence for the drug conspiracy was reduced to 20 years. (R.2586: Polk Hearing Tr., 21082). Adding the mandatory consecutive terms for their § 924(c) offenses, Gordon's total sentence was reduced to 25 years, Dale's total sentence was reduced to 45 years, and Polk's total sentence was reduced to 70 years. For Brown, the district court took a different approach, reducing all of his sentences, including his two life sentences, to time served (about 28 years). (R.2587: Brown Hearing Tr., 21122).

Oddly enough, Gordon's sentence was reduced so drastically that it resulted in almost three years of *overserved* time, such that Gordon can now get credit against any future sentence for a supervised-release violation—no matter how serious that violation might be. (R.2573: Motion to Reconsider, 20879). Hoping to avoid that unintended result, the government moved the district court to reconsider whether to reduce Gordon's total sentence to time served. (R.2573: Motion to Reconsider, 20883–85). Correcting the error was permitted, the

government explained, because Gordon's amended judgment had not yet been entered and because granting Section 404 relief is not a resentencing, but rather a sentence modification that can be revisited on reconsideration. (R.2573: Motion to Reconsider, 20883–84).

The district court disagreed. (R.2583: Order Denying Motion to Reconsider, 21027). Although acknowledging the problem, the district court found that it lacked authority to correct the mistake on reconsideration because, in its view, it had conducted a plenary resentencing. (R.2583: Order Denying Motion to Reconsider, 21027–32).

In the same order, the court further analyzed the government's eligibility arguments that it had previously rejected on the record. (R.2583: Order Denying Motion to Reconsider, 21033). According to the district court, the remand order in Gordon's appeal did not preclude plenary resentencing because the covered drug conspiracy resulted in "categorical eligibility" under Section 404. (R.2583: Order Denying Motion to Reconsider, 21036). More generally, the district court found "[n]othing in the controlling caselaw" that prohibited it from conducting a plenary resentencing on all counts, including the non-covered homicides. (R.2583: Order Denying Motion to Reconsider, 21037–38).

The district court then entered Gordon's amended judgment, along with Polk's amended judgment. (R.2584: Gordon Amended Judgment, 21040; R.2585: Polk Amended Judgment, 21045). By then, it had also entered amended judgments for Dale and Brown. (R.2579: Dale Amended Judgment, 21008; R.2582: Brown Amended Judgment, 21022). The government timely appealed those judgments. (R.2588: Dale Notice of Appeal, 21126; R.2590: Polk Notice of Appeal, 21128; R.2592: Brown Notice of Appeal, 21130; R.2591: Gordon Notice of Appeal, 21129). And the appeals have since been consolidated for briefing and submission. (Order in *United States v. Dale et al.*, Nos. 23-1050/1069/1070/1071 (6th Cir. June 30, 2023).

## Summary of the Argument

Section 404 of the First Step Act is a sentence-reduction provision for crack offenses, and it did not permit the district court to reduce the defendants' life sentences for seven gang-related murders. Even the Seventh Circuit, with the most expansive reading of Section 404, does not permit sentence reductions on non-covered offenses that did not form an intertwined sentencing package with a covered crack offense. Contrary to the district court's decision here, non-covered offenses are not eligible for relief merely because a covered offense was included in the same judgment. The murder sentences here were imposed independently, without regard to drug quantity, and were not influenced in any way by the sentence imposed for the covered drug conspiracy. The district court committed legal error in reducing the murder sentences under Section 404, and the amended judgements should be vacated on that basis.

Even apart from eligibility, the district court abused its discretion in reducing those sentences by several decades. There were no material changes to the guideline or statutory ranges that would warrant relief, yet the district court pressed on. It then inexplicably placed new

significance on factors that it had recently viewed as unremarkable when denying several of the defendants' motions for compassionate release. At the same time, it downplayed the grim reality that the defendants committed multiple murders to promote and expand a violent, large-scale drug organization. The district court also never grappled with the disconnect between the reason why Section 404 permits reduced sentences for crack offenses and the relief it ordered here. It makes no sense that four ruthless killers, whose sentences hinged on murder, should receive substantial sentence reductions, or be released from prison entirely, merely because their criminal enterprise happened to involve crack. Reducing their sentences under Section 404 was both contrary to law and an abuse of discretion.

# Argument

**I.     The district court did not have the authority under Section 404 of the First Step Act to impose reduced sentences for the defendants' non-covered homicides.**

A court generally cannot modify a sentence except as expressly authorized by statute. *United States v. Alexander*, 951 F.3d 706, 707 (6th Cir. 2019); 18 U.S.C. § 3582(c)(1)(B). Whether an offense is eligible for a sentence reduction under Section 404 of the First Step Act is a question of statutory interpretation, which this Court reviews de novo. *United States v. Boulding*, 960 F.3d 774, 778 (6th Cir. 2020). Here, the district court's decision to reduce the defendants' non-covered homicide sentences was contrary to statute.

## A.     The only covered offense in this case is the drug conspiracy.

The Fair Sentencing Act of 2010 "aimed to lessen the sentencing disparity between cocaine offenses and those involving crack cocaine." *Id.* at 777; §§ 2–3, 124 Stat. 2372 (2010). To achieve that goal, Congress raised the quantity of crack cocaine needed to trigger mandatory-minimum sentences under 21 U.S.C. § 841(b)(1). *Terry v. United States*, 141 S. Ct. 1858, 1861 (2021). The quantity needed to trigger a 5-year mandatory minimum was increased from 5 grams to 28 grams, and the

quantity needed to trigger a 10-year mandatory minimum was increased from 50 grams to 280 grams. § 2(a), 124 Stat. 2372.

In 2018, Congress made those changes retroactive for offenders who were previously sentenced for a "covered offense," defined as a federal crime with "statutory penalties" that were "modified by" the Fair Sentencing Act. § 404(a), 132 Stat. 5194 (2018). Under Section 404, "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if . . . the Fair Sentencing Act were in effect at the time the covered offense was committed." § 404(b), 132 Stat. 5194.

Here, there is no dispute that this case involves only one covered offense for each defendant—the drug conspiracy (Count 1). (R.2572: Gordon Hearing Tr., 20850). The drug conspiracy is a covered offense because the Fair Sentencing Act modified the penalties for the crack-cocaine object of the crime, even if the statutory range remains the same due to the quantity of powder cocaine involved. *See, e.g., United States v. McSwain*, 25 F.4th 533, 538 (7th Cir. 2022); *United States v. Winters*, 986 F.3d 942, 950 (5th Cir. 2021). This Court reached the same conclusion in Gordon's earlier Section 404 appeal, finding him "eligible"

for relief "for the sentence that he received on Count 1." (Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), p. 3).

The defendants' homicide convictions under 21 U.S.C. § 848(e), however, are not covered offenses because the Fair Sentencing Act did not modify the statutory penalties for that crime. *Snow*, 967 F.3d at 565. Relying on *Snow*, this Court has already rejected Gordon's argument that his § 848(e) conviction is a covered offense. (Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), pp. 3–4).

The defendants' § 924(c) convictions are likewise not covered offenses. *United States v. Atkinson*, No. 19-1678, 2019 WL 11705979, at *2 (6th Cir. Dec. 17, 2019); *United States v. Gee*, 843 F. App'x 215, 217 (11th Cir. 2021). The defendants received consecutive terms based on the mandatory minimums applicable at the time, and the Fair Sentencing Act did not modify those penalties. Correctly, the district court did not disturb the defendants' § 924(c) sentences.

**B.    The defendants' non-covered homicide sentences were not eligible for relief because they were not part of an intertwined sentencing package with the covered drug offense.**

The defendants' non-covered homicides were not derivatively eligible for a sentence reduction under Section 404 either. The district court erred in concluding otherwise.

No court of appeals has held that Section 404 permits reducing the sentences for non-covered offenses that are entirely disconnected from the sentence for the covered offense. Several circuits have adopted a stringent standard, holding that Section 404 relief is limited to covered offenses and can never extend to non-covered offenses. *See United States v. Young*, 998 F.3d 43, 55 (2d Cir. 2021); *United States v. Gladney*, 44 F.4th 1253, 1262 (10th Cir. 2022); *United States v. Baptiste*, 834 F. App'x 547, 550 (11th Cir. 2020). Even the Seventh Circuit, which interprets Section 404 more broadly, permits sentence reductions on non-covered offenses only when those sentences were part of an intertwined sentencing package that included a covered offense. *See United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023); *United States v. Hudson,* 967 F.3d 605, 610 (7th Cir. 2020). No court of appeals

has permitted "plenary resentencing" on all counts merely because a covered offense was involved in the case.

As the government explained below, the Department of Justice supports the broader theory of eligibility that the Seventh Circuit has adopted—the sentencing-package theory—but that approach still did not permit a reduction of the defendants' murder sentences here. The phrase "impose a reduced sentence" in the statute clarifies that courts are not limited to reducing "the sentence" for the covered offense but may also reduce the sentence of any non-covered offense that, together with the covered offense, formed an intertwined sentencing package. *See Hudson,* 967 F.3d at 610. A package is formed when the court "impose[s] a single, integrated sentence that blends punishment for a covered offense with punishment for a non-covered offense." *Curtis*, 66 F.4th at 694.

This Court has not yet adopted the sentencing-package theory of eligibility. *See United States v. Braden*, No. 21-5449, 2022 WL 4393186, at *3 (6th Cir. Sept. 23, 2022) (reserving judgment on the issue); *United States v. Chambers*, No. 21-1331, 2022 WL 612805, at *2 (Mar. 2, 2022) (same). But it has hinted at its endorsement of the Seventh Circuit's

approach, granting the government's motion to remand in a case where the defendant's covered and non-covered drug offenses formed an intertwined sentencing package. *United States v. Contrell Smith*, Nos. 20-1833/21-1218, 2022 U.S. App. LEXIS 1103 (6th Cir. Jan. 13, 2022) (order).

Under the sentencing-package theory, "[t]he operative question is whether there is reason to think that, at the time of sentencing, the two sentences were interdependent." *Curtis*, 66 F.4th at 694. This may be true if a covered offense influenced the guideline range for a non-covered offense because the counts grouped together for sentencing. *See, e.g.*, *Hudson*, 967 F.3d at 610–11 (district court was permitted to reduce sentence on firearm offense that grouped with more serious covered offense). In other cases, there may be "indicia in the record, such as statements made at the time of sentencing or evidence that the court intended to issue one global sentence of an appropriate length." *Curtis*, 66 F.4th at 694. "The inquiry is not about the connection between counts for the purposes of conviction; it is about the connection between the offenses for purposes of sentencing." *Id.*

Here, even under the sentencing-package theory, the defendants' non-covered homicide sentences were not eligible for reduction under Section 404. The fact that the seven gang-related murders were committed to further the defendants' drug conspiracy says nothing about whether the *sentences* imposed for those homicide offenses were somehow interdependent with the crack sentences. The homicide sentences stood on their own. Every murder is treated independently under the guidelines—and given its own unit—because each involves a distinct harm to an identifiable victim. *See* USSG § 3D1.2 (excluding homicides from grouping). The statutory penalties under § 848(e) also independently authorized a life sentence for each homicide. The homicide sentences were thus not contingent on the offense level for the drug conspiracy and were not otherwise influenced by the sentence on that count. *See United States v. Martin*, 974 F.3d 124, 135–37 & n.11 (2d Cir. 2020); *United States v. Sumler*, No. 95-154-2 (BAH), 2021 WL 6134594, at *17–19 (D.D.C. Dec. 28, 2021); *Sanchez v. United States*, No. 01-cr-74-2, 2021 WL 5234978, at *4 (S.D.N.Y. Nov. 10, 2021).

Only one defendant, Brown, even attempted to show a sentencing package, but his argument rested on a faulty premise. (R.2576: Brown

Sentencing Memo, 20903). Back in 1997, the probation department's presentence report erroneously stated that Brown's drug offense and homicide count "grouped together." (Brown PSR ¶ 37). But as the government explained below, that's not correct. (R.2587: Brown Hearing Tr., 21117). First-degree murder falls under USSG § 2A1.1 and is thus "excluded from" the grouping provisions. USSG § 3D1.2. The error was inconsequential anyway. For each count, the base offense level was already 43, the highest level, and could not have been increased due to grouping. Thus, despite the mistaken reference to grouping, Brown did not receive a single, blended punishment for the drug conspiracy and murder counts.

In short, the sentences imposed for the defendants' non-covered homicides had "no mutual exclusivity nor any interdependence" with the sentence imposed for the covered drug conspiracy. *Sumler*, 2021 WL 6134594, at *17–19 (internal quotation marks omitted). Indeed, the district court did not have the option at the original sentencings "to issue one global sentence." *Curtis*, 66 F.4th at 694. Because the guidelines were mandatory back then, the district court was required to impose a life sentence for each homicide, independent of the life

sentence imposed for the drug conspiracy, which was likewise mandatory. With no aggregate term to "untangle," the murder sentences here were not eligible for relief under Section 404, even if this Court were to adopt the sentencing-package approach. *Id.*

The district court offered no authority to support its more expansive view that Section 404 "permits plenary resentencing" and authorizes reducing "the total sentence" previously imposed anytime "a covered offense is involved." (R.2541: Omnibus Order, 20531). The court relied on three appellate cases—*Hudson*, *Gravatt*, and *Maxwell*—but none of them support plenary resentencing as a theory for extending eligibility to non-covered offenses. (R.2541: Omnibus Order, 20531). In *Hudson*, the Seventh Circuit made no mention of plenary resentencing, and it found eligibility only because the covered and non-covered offenses were packaged for sentencing. *Hudson*, 967 F.3d at 610–11. In *Gravatt*, the Fourth Circuit concluded that the defendant's drug conspiracy was a covered offense, but it did not mention plenary resentencing or hold that eligibility should extend to non-covered offenses. *United States v. Gravatt*, 953 F.3d 258, 262–64 (4th Cir. 2020). And *Maxwell* did not concern eligibility at all. *United States v. Maxwell*,

991 F.3d 685 (6th Cir. 2021). There, the issue was whether courts, at the discretionary phase, must conduct a "plenary resentencing" that accounts for legal and factual developments. *Id.* at 688–93. This Court held that courts are permitted but not required to consider those developments when balancing the § 3553(a) factors and deciding how to exercise its discretion. *Id.* at 692.

The Supreme Court, in *Concepcion v. United States*, 142 S. Ct. 2389 (2022), did not expand eligibility either. *Concepcion*, like *Maxwell*, concerned the scope of a district court's discretion to impose a reduced sentence on a covered offense for which Section 404 eligibility was already established. *Concepcion*, 142 S. Ct. at 2397; *see also United States v. Jenkins*, 50 F.4th 1185, 1200 (D.C. Cir. 2022); *United States v. Peoples*, 41 F.4th 837, 842 (7th Cir. 2022). "*Concepcion*'s insight goes to what a court may consider *after* it finds a defendant meets the threshold requirement for a sentence modification." *United States v. McCall*, 56 F.4th 1048, 1061 (6th Cir. 2022) (en banc) (emphasis in original). Only then may courts "consider intervening changes of law or fact in exercising their discretion." *Concepcion*, 142 S. Ct. at 2404.

Compounding its error, the district court reasoned that it was free to impose reduced sentences on the homicides because "controlling caselaw" did not prohibit it from doing so. (R.2583: Order Denying Motion to Reconsider, 21038). That approach is exactly backwards. The authority to modify a sentence cannot be inferred from judicial silence, but rather must be expressly authorized by statute. *See* 18 U.S.C. § 3582(c)(1)(B); *United States v. Butler*, 805 F. App'x 365, 367 (6th Cir. 2020). The district court skipped over that requirement, never explaining the statutory basis for its eligibility determination.

Also absent from the district court's analysis was any concern for whether "Congress intended to effect" such a "monumental change" to the principle of finality. *United States v. Hunter*, 12 F.4th 555, 566 (6th Cir. 2021). If Congress intended defendants convicted of a crack offense to have their *murder* sentences reduced—an odd, if not irrational, idea—then surely it would have said so more directly. Congress "does not hide elephants in mouseholes." *Id.* (cleaned up). The defendants here received life sentences for seven premeditated murders, those sentences stood on their own, and they would have been no different

had the Fair Sentencing Act been in effect when the defendants committed the covered drug conspiracy.

The very nature of sentence-modification proceedings likewise undercuts the district court's claim of plenary-resentencing authority over non-covered offenses. As the Seventh Circuit has explained, just as "a motion under a retroactive guideline is not a form of full sentencing," nor are "rulings on motions for compassionate release" or "rulings on retroactive statutes," such as Section 404. *United States v. Hible*, 13 F.4th 647, 650 (7th Cir. 2021) (relying on *Dillon v. United States*, 560 U.S. 817 (2010)). "None of these involve full sentencing[.]" *Id.*

In sum, merely having a conviction for a covered offense does not, by itself, expand eligibility for relief under Section 404 to all non-covered offenses included in the same judgment. That view on plenary-resentencing authority finds no support in the statute or the caselaw from this Circuit or any other federal court of appeals to have considered the question. This Court should reverse.

### C. The government repeatedly argued that the homicide sentences were not eligible for a reduction—including in its prehearing memorandum—and did not "forfeit" those arguments.

The district court was also incorrect in declaring the government's eligibility arguments "forfeited," despite having the opportunity to consider and address those arguments well before reaching its sentence-reduction decisions. (R.2572: Gordon Hearing Tr., 20869). A sentencing objection is not forfeited when raised in time for the district court to rule on the objection. *See United States v. Bowens*, 938 F.3d 790, 801 (6th Cir. 2019); *United States v. Prater*, 766 F.3d 501, 506 (6th Cir. 2014). The government preserved this issue by repeatedly objecting to any reduction, detailing the limits of the sentencing-package theory in its prehearing memorandum, and giving the district court an opportunity to apply the correct legal standard before making its sentencing determinations at the defendants' hearings. The government raised its arguments more than a week before Gordon's and Dale's hearings and several weeks before Brown's and Polk's hearings. The district court thus had ample time to consider those arguments and incorporate them (or not) into its decision, and it ultimately rejected them on the merits for the murder counts. At the same time, it agreed

with (and incorporated) the government's arguments that the § 924(c) counts could not be reduced, leaving those sentences intact. (R.2583: Order Denying Motion to Reconsider, 21036). There was no forfeiture.

But even if plain-error review applied, the district court's eligibility determination should be reversed. Even standing alone, the statutory text refutes the district court's conclusion that Section 404 permits "plenary resentencing." Section 404 only allows sentences to be "reduced." § 404(b), 132 Stat. 5194. If the statute permitted plenary resentencings, then it would also allow sentences to be *increased*—for instance, based on a defendant's misconduct while in prison—because a plenary resentencing is not a one-way ratchet. *See United States v. McFalls*, 675 F.3d 599, 606 (6th Cir. 2012) (noting that "a general remand gives the district court authority to redo the entire sentencing process" and may even result in a "potentially harsher sentence").

This Court's intervening decision in *United States v. Woods*, 61 F.4th 471 (6th Cir. 2023), further establishes that the district court's view of Section 404 was plainly erroneous. *See Henderson v. United States*, 568 U.S. 266, 273–74 (2013) (whether an error is plain is determined at the time of appellate review). In *Woods*, this Court stated

that Section 404 "[s]entence-reduction proceedings are *not* 'plenary resentencing[s]' in which district courts must recalculate the Guidelines ranges for old offenders under new law." *Woods*, 61 F.4th at 479–80 (emphasis added). That analysis adhered to *Concepcion*, which similarly limited Section 404 proceedings in ways that are inconsistent with plenary resentencing. *See Concepcion*, 142 S. Ct. at 2402 & nn.5–6. In short, the district court's view that it was free to conduct plenary resentencings, including with respect to non-covered offenses, was inconsistent with both the statutory language and binding case law.

Here, moreover, the district court's reliance on plenary-resentencing authority was plainly erroneous in the manner it was used—to expand eligibility. It is settled law that eligibility for a sentence modification is a threshold inquiry, and a district court has *no* authority or discretion (plenary or otherwise) to reduce a final sentence unless that initial hurdle is overcome. *See* 18 U.S.C. § 3582(c)(1)(B); *United States v. Foreman*, 958 F.3d 506, 510 (6th Cir. 2020) (describing the district court's discretionary authority as available only when eligibility is established). By conflating two distinct steps in the

analysis—relying on its broad authority at the discretionary phase to bootstrap eligibility—the district court plainly erred.

## D. Concluding that Gordon's murder sentence was eligible for relief violated the mandate rule.

Reducing Gordon's murder sentence was improper for another reason: it violated the mandate rule. Whether a district court properly interpreted the scope of a remand order is a legal issue, subject to de novo review. *United States v. Parks*, 700 F.3d 775, 777 (6th Cir. 2012).

The mandate rule is a specific application of the law-of-the-case doctrine under which a district court is bound by the scope of the appellate court's remand order. *In re Purdy*, 870 F.3d 436, 442–43 (6th Cir. 2017). A district court cannot reconsider issues that the appellate court "expressly or impliedly decided." *United States v. Mendez*, 498 F.3d 423, 426 (6th Cir. 2007) (internal quotation marks omitted).

To determine the scope of a remand order, a district court must consider the mandate rule's purpose of encouraging finality and discouraging wasteful litigation, as well as "the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. O'Dell*, 320 F.3d 674, 679–80 (6th Cir. 2003) (internal quotation marks omitted). A key feature of a limited

remand is the presence of limiting language. *Id*. at 680. But a remand phrased in general terms may still be limited when considered in context with the analysis of the opinion. *Id*. at 681.

Here, in Gordon's earlier appeal, he asked this Court to reverse the district court's order denying his Section 404 motion. In resolving that appeal, this Court vacated the original district judge's order denying relief "only as to Count 1." (Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), p. 4). By using limiting language to vacate the order "only as to" the covered drug conspiracy, this Court left the order intact as to Gordon's non-covered homicide. Had this Court wished to vacate the district court's order entirely, it would not have included an express limitation.

This Court's analysis bolsters that conclusion. Having examined both statutes of conviction, this Court concluded that "only" the penalties for Count 1 were modified by the Fair Sentencing Act. And it was unmistakable in finding that only one of Gordon's sentences was "eligible" for relief: "the sentence that he received on Count 1." (Order in *United States v. Gordon*, No. 19-1739 (6th Cir. Jan. 14, 2021), p. 3). At least impliedly, then, this Court determined that Gordon's non-covered

homicide offense was not eligible for Section 404 relief. By revisiting the issue and concluding otherwise, the newly assigned district judge violated the mandate rule.

When the government raised this issue below, the district court concluded that the mandate rule did not apply, pointing to its broad authority in the resentencing context. (R.2583: Order Denying Motion to Reconsider, 21034); *United States v. Hebeka*, 89 F.3d 279, 284–85 (6th Cir. 1996). But regardless of whether a district court has broad resentencing authority in general, the court must abide by the specific remand order in the case before it. Under the remand order here, Gordon was eligible for relief only as to the drug conspiracy, so the district court's discretion extended only to that count.

The district court also suggested that the remand order did not foreclose "categorical eligibility." (R.2583: Order Denying Motion to Reconsider, 21036). But that strains this Court's reasoning and mandate beyond recognition. If Gordon could be categorically eligible for relief, then there would have been no reason for this Court to analyze eligibility count by count, as done in the remand order. The plain language and rationale of the remand order left no room to reduce

Gordon's homicide sentence under a theory of categorical eligibility for all counts of conviction.

## II. Regardless of eligibility, the district court abused its discretion in dramatically reducing the life sentences here.

Even if the defendants were somehow eligible for relief on their murder sentences under Section 404, the district court abused its discretion in reducing their sentences so drastically. In granting those reductions, the district court lost all sight of the legal framework that authorized its discretion in the first place. *See United States v. Sweet*, No. 21-1477, 2021 WL 5371402, at *3 (6th Cir. Nov. 18, 2021); *United States v. Bass*, 17 F.4th 629, 637–38 (6th Cir. 2021).

### A. The guideline ranges and statutory penalties for the defendants' offenses have not changed in any material respect.

For each eligible offense, a district court must recalculate the guideline range "as if" the Fair Sentencing Act's amendments were in effect at the original sentencing. *Concepcion*, 142 S. Ct. at 2402 & n.6. Here, the guideline ranges were unchanged for the drug conspiracy and each homicide. (R.2571: Dale Hearing Tr., 20811; R.2572: Gordon Hearing Tr., 20847; R.2586: Polk Hearing Tr., 21053; R.2587: Brown

Hearing Tr., 21117). There was thus no guideline-based reason to impose reduced sentences.

A district court must also consider arguments that intervening changes in law support discretionary relief. *Concepcion*, 142 S. Ct. at 2404–2405. Here, the district court said in its prehearing order that it would consider the impact of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (R.2541: Omnibus Order, 20533). Under *Apprendi*, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury." *Apprendi*, 530 U.S. at 490. But here, the jury made all the findings needed to apply the statutory penalty of life imprisonment on the murder convictions, and the statutory range today is the same as it was back then. So *Apprendi* had no effect on the murder counts.

Even for the drug-conspiracy count, *Apprendi* would have had no material impact. The defendants participated in a massive drug-trafficking enterprise involving kilogram-quantity exchanges that spanned a decade and covered ten states. Although the jury was not asked to make drug-quantity findings, the record nonetheless shows drug quantities for each defendant that exceed 5 kilograms of cocaine or

280 grams of crack, as needed today to trigger the statutory penalty of life in prison. (Gordon PSR ¶ 30; Dale PSR ¶¶ 16, 21, 23; Polk PSR ¶ 26; Brown PSR ¶¶ 30–31). It is telling that the current thresholds for life imprisonment are satisfied on this record—many times over—even though those markers did not exist when the record was developed. (*See, e.g.*, R.2587: Brown Hearing Tr., 21098; R.2568: Prehearing Memorandum, 20670–72). Accordingly, *Apprendi* did not justify imposing reduced sentences, even with respect to the covered drug offense. The district court did not rely on *Apprendi* at the December hearings, apparently agreeing with the government that *Apprendi* would not have changed the statutory ranges for the offenses here.

The intervening decision in *United States v. Booker*, 543 U.S. 220 (2005), did not support relief either. Although the guidelines are no longer mandatory under *Booker*, a significant below-guideline variance still requires a correspondingly significant justification. *Gall v. United States*, 552 U.S. 38, 50 (2007). And nothing about *Booker* could possibly have justified the extreme sentence reductions here.

### B. The district court's reasoning did not justify significant below-guideline variances for the defendants' murder sentences.

Given the jury verdicts and original sentences, the original sentencing judge reasonably expected that the defendants would spend the rest of their lives in prison to account for the seriousness and brutality of their offenses, especially the homicides. And the defendants, all in their early 50s, likely had several more decades on those life sentences. The newly assigned judge's decision to upend that landscape was an abuse of discretion, and it did not rest on the type of justification necessary to reduce the defendants' sentences so suddenly and significantly below their guideline ranges. *Gall*, 552 U.S. at 50.

Brown, for instance, had served less than 28 years of his life sentences when the district court ordered his release. (R.2568-2: Brown BOP Records, 20683). Although Brown's behavior in prison was not as poor as others, his unremarkable record was easily offset by the seriousness of his offenses. (R.2568-2: Brown BOP Records, 20687–89); *see Sweet*, 2021 WL 5371402, at *3 (district court abused its discretion by giving "outsized import" to prison record). The district court downplayed that seriousness, reasoning that Brown was "20 years old" when he murdered "a rival drug dealer," he "was not the shooter," and

he participated in the killing "as part of a gang" that he joined as a teenager. (R.2587: Brown Hearing Tr., 21118–19). But Brown was an adult parolee at the time, his role in the murder was significant, and the gang-related motive for the killing does not make it any less serious. By eliminating a rival drug dealer, Brown promoted the reputation of the Best Friends as a group of ruthless killers.

The same was true of Dale, whose four life sentences were reduced to 20 years each (plus his § 924(c) sentence). Like Brown, Dale's prison coursework and other rehabilitation efforts paled in comparison to the seriousness of his offenses. (R.2568-3: Dale BOP Records, 20697); *see Bass*, 17 F.4th at 638–39. As a three-time murderer in his early 50s, Dale did not deserve sentence reductions of any length, let alone down to the statutory minimum. Indeed, Dale's circumstances did not support a sentence reduction when the same district judge considered those same circumstances less than a year earlier. (R.2514: Order Denying Compassionate Release, 20170). As the district court recognized then, "when the crime is murder and the death penalty is an option, as here, the seriousness of the offense . . . carries considerable, if not preemptive, weight." (R.2514: Order Denying Compassionate Release,

20182). The district court's sudden reversal, only a year later, makes little sense.

The district court reduced each of Gordon's life sentences to the statutory minimum of 20 years. Gordon suffers from chronic kidney disease, among other conditions, but recently received a kidney transplant. (R.2572: Gordon Hearing Tr., 20871). Yet his health problems did not support a sentence reduction just a few years ago. As the district court explained then, "intentional murder should carry a mandatory life sentence." (R.2425: Order Denying Compassionate Release, 18997). And his "unremarkable" prison record did nothing to change "the historical fact" that Gordon's life sentence for murder "was not greater than necessary." (R.2425: Order Denying Compassionate Release, 18997; *see also* R.2568-4: Gordon BOP Records, 20705–20709). What was "undoubtedly" true only a few years ago is still true today. (R.2424: Order Denying Compassionate Release, 18997).

Although the district court tried to reconcile its decisions by claiming that Gordon's health had worsened, it simultaneously acknowledged that Gordon received a new kidney and was taken off dialysis. (R.2572: Gordon Hearing Tr., 20870–71). And the reality is

that many defendants who are sentenced to life in prison will eventually experience health problems. To the extent that a defendant is unable to receive proper medical care at a correctional facility, then perhaps compassionate release is the answer. But Section 404 is designed to reduce unjust disparities in drug sentences, not to address the health problems of a convicted murderer.

Although Polk's overall sentence is still lengthy due to his undisturbed § 924(c) sentences, reducing his life sentences under Section 404 was just as senseless. Polk's prison record is atrocious, violent even, and his efforts at reform are dismal. (R.2568-5: Polk BOP Records, 20716–29). The district court tried to explain this away, positing that Polk "entered survival mode in prison" and "was doing the best he could." (R.2586: Polk Hearing Tr., 21080). While acknowledging that reducing Polk's murder sentences down to 20 years would send "the wrong message," the district court never explained why reducing those life sentences to 25 years did not also send the wrong message. (R.2586: Polk Hearing Tr., 21081–82). Equally puzzling, the district court reasoned that a "term-of-years sentence" would open programming opportunities for Polk. (R.2586: Polk Hearing Tr., 21081).

But a much longer term-of-years sentence, more fitting for a three-time convicted murderer, would presumably have also opened those opportunities. Moreover, Polk's prison record strongly rebuts any suggestion that he would be interested in programming anyway.

For all four defendants, the district court did not account for the public's interest in having cold-blooded killers serve out their life sentences, another sudden reversal from what it said less than a year earlier. (R.2514: Order Denying Compassionate Release, 18997). The murders here were not isolated, they did not stem from a temporary lapse in judgment, and the defendants are being released far earlier than their victims' families were promised. As the district court recognized before, their life sentences, especially for the murders, were "not greater than necessary" to achieve the goals of sentencing. (R.2514: Order Denying Compassionate Release, 18997). Reducing them now, by way of Section 404, was an abuse of discretion.

The district court also improperly fixated on the relative culpability of a cooperator, Stacey Culbert. Although the passage of time has made the details less than clear, it appears that Culbert accepted responsibility and pleaded guilty to two homicides and two

§ 924(c) offenses and later had his concurrent life sentences reduced by providing substantial assistance to the government. (R.1156-1: Culbert Plea Agreement, 19567–75). Culbert has since been released from prison.

But whether Culbert got a break for pleading guilty and cooperating says nothing about whether *these* defendants—who did neither—should get reduced sentences. Someone else's substantial-assistance reduction does not diminish these defendants' culpability for murdering at least seven people in cold blood. As the government explained below, "sometimes defendants get sentences that are better than what they deserve" because their cooperation, especially when it comes to organized crime, is necessary "to make a broader impact by catching, convicting, and sentencing other members of that organization." (R.2587: Brown Hearing Tr., 21103). Culbert received a lower sentence only because the original district judge agreed that he had earned that extraordinary relief through his substantial assistance, which distinguishes his circumstances significantly. *See United States v. Conatser*, 514 F.3d 508, 522 (6th Cir. 2008). By using Culbert's early release as a basis for exercising its discretion here, the newly assigned

district judge effectively awarded these defendants a benefit that they never earned.

Especially given those realities, the district court had an undue focus on Culbert, at least with respect to Gordon and Brown. As part of its reasoning for reducing Gordon's life sentences, the district court stated that Gordon's culpability was "significantly less" than Culbert's. (R.2572: Gordon Hearing Tr., 20873). At Brown's hearing, it questioned "the government's position that a life sentence is necessary to protect the public and afford adequate deterrence" for Brown "when it was not necessary in order to achieve those goals" for Culbert. (R.2587: Brown Hearing Tr., 21122). By contrast, when discussing the other two defendants, the district court seemed to brush aside Culbert's culpability. It said that the number of killings committed by Culbert did not diminish the seriousness of Dale's conduct. (R.2571: Dale Hearing Tr., 20834). And for Polk, the district court noted that the government's treatment of Culbert was outside its control because Culbert had apparently "made his peace with the government." (R.2586: Polk Hearing Tr., 21082).

Beyond these inconsistencies, the district court did not adequately account for the fact that Culbert accepted responsibility decades ago, pleaded guilty, and cooperated—none of which the defendants did here. And with so much focus on Culbert, the district court improperly discounted other, more salient factors in its § 3553(a) analysis—namely, the seriousness of the offenses and the need for just punishment for these specific defendants. *See Bass*, 17 F.4th at 638 (observing that the defendant's reduced sentence appeared facially disproportionate to the seriousness of his crimes).

### C. The reductions here do not align with Section 404's purpose of reducing the crack-to-powder disparity in sentencing.

The record also refutes the possibility that relief was warranted to further Section 404's remedial purpose—to redress crack-to-powder sentencing disparities—because no such disparity existed here. The defendants' guideline calculations were driven by the murders, not by the amount of crack, and each defendant's guideline range remains life in prison because of those murders. Even considering just the amount of crack or powder cocaine, their current guideline ranges would still be life in prison, and a life sentence would still be available by statute. All to say, the length of the defendants' life sentences had nothing to do

with the crack-to-powder disparity that Congress sought to remedy in the Fair Sentencing Act and Section 404. By reducing those sentences anyway, the district court gave the defendants here a substantial windfall—unavailable to other murderers—merely because their drug conspiracy happened to involve crack.

The district court did not grapple with these problems, despite the government's persistence in raising them. (*See, e.g.*, R.2587: Brown Hearing Tr., 21104–21105; R.2586: Polk Hearing Tr., 21062). Instead, it reduced the defendants' life sentences without any regard to the wrong that Congress sought to redress. *See United States v. Ware*, 964 F.3d 482, 487 (6th Cir. 2020) (sentence-reduction decisions should be made with reference to the legislative purpose behind the First Step Act and Fair Sentencing Act); *United States v. Smith*, 959 F.3d 701, 704 (6th Cir. 2020) (instructing the district court on remand to consider "the purposes of the First Step Act and Fair Sentencing Act"). That, too, was an abuse of discretion.

### D. Reducing Gordon's murder sentence to less than time served was an abuse of discretion.

In another odd twist, the district court reduced Gordon's total sentence down to 25 years, even though he had already served nearly 28

years in prison. Consequently, he now has "banked time" that will be credited against any future sentence for violating the terms of his supervised release. *United States v. Jackson*, 952 F.3d 492, 498 (4th Cir. 2020). Giving banked time to a convicted murderer whose crimes are still punishable by life in prison does not further any of the § 3553(a) factors. *See United States v. Shannonhouse*,  No. 07-289, 2019 WL 3426328, at *2 (W.D. Pa. July 30, 2019) (agreeing with several "district courts that have declined to impose sentences of less than time served under the First Step Act" to avoid the possibility that a defendant could credit the banked time against a future sentence); *cf. United States v. Nichols*, 897 F.3d 729, 734 (6th Cir. 2018) (involving an illegally excessive sentence).

Hoping to avoid giving Gordon a free pass for any supervised-release violations, the government timely moved for reconsideration. (R.2573: Motion to Reconsider, 20879–85). Although the district court denied that request, largely on procedural grounds, the record leaves no doubt that awarding Gordon banked time was a mistake. In its order denying reconsideration, the district court acknowledged that the government made "a valid point" about banked time that it "did not

consider" before reducing Gordon's sentences but "likely would have" had it been raised sooner. (R.2583: Order Denying Motion to Reconsider, 21032). And at Brown's hearing, which occurred after Gordon's hearing, the district court recognized the "merit" of the government's reconsideration arguments and reduced Brown's sentence "to time served on all counts," even though it considered Brown to be "the least culpable" defendant. (R.2587: Brown Hearing Tr., 21106, 21121–22).

Of course, the issue of overserved time will be moot if this Court agrees with the government's broader arguments. But short of that, this Court should at least vacate Gordon's sentence and remand with instructions to impose a sentence of time served on all counts, as done with Brown.

## Conclusion

This Court should vacate the defendants' amended judgments and remand with instructions for the district court to reinstate the original murder sentences.

Respectfully submitted,

Dawn N. Ison
United States Attorney

/s/ Jessica Currie
Jessica Currie
Assistant United States Attorney
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9531
jessica.currie@usdoj.gov

Dated: July 21, 2023

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Rule 32(f), it contains 9,194 words. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook.

/s/ Jessica V. Currie
Assistant United States Attorney

Dated: July 21, 2023

# Certificate of Service

I certify that on July 21, 2023, I caused this Brief for the United States to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit using the ECF system, which will send notification of the filing to the following attorney of record:

Nicole L. Smith, nlsmith@smithmihas.com

John R. Minock, jminock@cramerminock.com

Fabian Franco Renteria, fabian_renteria_franco@fd.org

Benton C. Martin, benton_martin@fd.org

Laura Danielle Mazor, laura_mazor@fd.org


/s/ Jessica V. Currie
Assistant United States Attorney

# Relevant District Court Documents

The United States of America designates as relevant these documents in the district court's electronic record, Eastern District of Michigan case number 92-81127:

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 1156-1 | Culbert Plea Agreement | 19567–75 |
| 2359 | Gordon Section 404 Motion for Retroactive Application of First Step Act | 17327–354 |
| 2362 | Brown Section 404 Motion for Reduced Sentence | 17422–441 |
| 2365 | Dale Section 404 Motion for Reduced Sentence | 17457–471 |
| 2366 | Polk Section 404 Motion for Reduced Sentence | 17472–484 |
| 2372 | Order Denying Gordon Motion for Reduced Sentence | 17570 |
| 2376 | Gordon Notice of Appeal | 17634 |
| 2386 | Brown Order Denying Section 404 Motion | 17663 |
| 2391 | Brown Motion to Reconsider | 17726–735 |
| 2425 | Gordon Order Denying Compassionate Release | 18991–19001 |
| 2514 | Dale Order Denying Compassionate Release | 20170–183 |
| 2541 | Omnibus Order | 20518–42 |
| 2555 | Dale Notice to Appear in Person | 20624 |
| 2568 | Prehearing Memorandum Sentence Modification | 20652–729 |

| Record No. | Document Description | Page ID Range |
|---|---|---|
| 2571 | Dale Hearing Tr., 12/01/2022 | 20807–840 |
| 2572 | Gordon Hearing Tr., 12/01/2022 | 20841–878 |
| 2573 | Motion to Reconsider | 20879–886 |
| 2576 | Brown Sentencing Memorandum | 20900–983 |
| 2579 | Dale Amended Judgment | 21008–12 |
| 2582 | Brown Amended Judgment | 21022–26 |
| 2583 | Order Denying Motion to Reconsider | 21027–39 |
| 2584 | Gordon Amended Judgment | 21040–44 |
| 2585 | Polk Amended Judgment | 21045–49 |
| 2586 | Polk Hearing Tr., 12/20/2022 | 21050–85 |
| 2587 | Brown Hearing Tr., 12/21/2022 | 21086–125 |
| 2588 | Dale Notice of Appeal by USA | 21126 |
| 2590 | Polk Notice of Appeal by USA | 21128 |
| 2591 | Gordon Notice of Appeal by USA | 21129 |
| 2592 | Brown Notice of Appeal by USA | 21130 |
| n/a | Brown Presentence Investigation Report | n/a |
| n/a | Dale Presentence Investigation Report | n/a |
| n/a | Gordon Presentence Investigation Report | n/a |
| n/a | Polk Presentence Investigation Report | n/a |