UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———

**No. 23-1050**

———

**United States of America,**

Plaintiff-Appellant,

v.

**Edward Dale,**

Defendant-Appellee.

———

Appeal from the United States District Court
for the Eastern District of Michigan (Southern Division)

Hon. David M. Lawson
No. 2:92-cr-81127-32

———————

**APPELLEE'S BRIEF**

———————

Fabián Rentería
Counsel for Edward Dale
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, MI 48226
P: 313.463.6143
E: fabian_renteria_franco@fd.org

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iv

STATEMENT IN SUPPORT OF ORAL ARGUMENT .................................. 1

STATEMENT OF ISSUES ............................................................................ 2

STATEMENT OF THE CASE ....................................................................... 3

SUMMARY OF THE ARGUMENT............................................................... 18

ARGUMENT....................................................................................................20

  I.   The government fails in showing that the district court committed legal error when it found Mr. Dale eligible for relief under the First Step Act of 2018 § 404....................................................................20

    A.  Standard of Review.......................................................................20

    B.  Mr. Dale is eligible for First Step Act relief. ...................................20

  II.  Mr. Dale's eligibility for resentencing is proper and the government waived or forfeited its arguments about such eligibility after failing to respond to briefing or raising the issue until immediately before resentencing. ..................................................................................... 26

    A.  Standard of Review.......................................................................26

    B.  The government waived, or alternatively forfeited, any argument concerning Mr. Dale's eligibility for resentencing under the sentencing-package doctrine pursuant to § 404 relief. ...........................................28

  III.  The government fails in showing that the district court abused its discretion in reducing Mr. Dale's sentence. ................................... 31

    A.  Standard of Review.......................................................................31

B.  The district court took no shortcuts in properly discussing the applicable penalties and acknowledged the relevance of intervening changes in sentencing law. ...................................................... 33

C.  The district court carefully considered the 18 U.S.C. § 3553(a) factors in finding that a downward variance from the advisory guidelines range of life to 45-years was an appropriate sentence. ........ 38

CERTIFICATE OF SERVICE...................................................................... 45

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ......... 46

# TABLE OF AUTHORITIES

## Cases

*Apprendi v. New Jersey,* 530 U.S. 466 (2000)............................................38

*Boler v. Earley*, 865 F.3d 770 (6th Cir. 2017) ..............................................20

*Concepcion* v. *United States*, 597 U.S. 481 (2022)...............................passim

*Kimbrough v. United States*, 552 U.S. 85 (2007) ........................................ 37

*Pepper v. United States*, 562 U.S. 476 (2011) ..............................................43

*U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgt., LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387 (2018) ......................................................20

*United States v. Beamus*, 943 F.3d 789 (6th Cir. 2019) ............................. 21

*United States v. Booker*, 543 U.S. 220 (2005)............................................. 37

*United States v. Boudreau,* 564 F.3d 431 (6th Cir. 2009) ..........................29

*United States v. Boulding*, 960 F.3d 774 (6th Cir. 2020) .....................12, 21

*United States v. Curtis*, 66 F.4th 690 (7th Cir. 2023)........................... 23, 27

*United States v. Felton*, 587 F.Supp. 3d 366 (W.D. Va. 2022) ...................46

*United States v. Flowers*, 963 F.3d 492 (6th Cir. 2020).............................. 35

*United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020).............................. 23

*United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007) ............................. 24

*United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020) ......................passim

*United States v. Ismel*, No. 94-00008, 2022 WL 1203823 (W.D. Va. Apr. 22, 2022) ...................................................................................................45

iv

*United States v. Lara*, 590 F. App'x 574 (6th Cir. 2014) ............................ 28

*United States v. Martin*, 817 F.App'x 180 (6th Cir. 2020) .......................... 43

*United States v. Maxwell*, 991 F.3d 685 (6th Cir. 2021) ................ 25, 26, 40

*United States v. Montgomery*, 998 F.3d 693 (6th Cir. 2021) ..................... 28

*United States v. Noble*, 762 F.3d 509 (6th Cir. 2014) ................................. 29

*United States v. Olano*, 507 U.S. 725 (1993) .............................................. 28

*United States v. Pope*, No. 21-1054, 22 WL 2064682 (6th Cir. June 8, 2022)
........................................................................................................... 33

*United States v. Stock*, 685 F.3d 621 (6th Cir. 2012) ................................. 45

*United States v. Ventura*, 864 F.3d 301 (4th Cir. 2017) ............................ 25

*United States v. Vonner*, 516 F.3d 382 (6th Cir. 2008) .............................. 29

## Statutes

18 U.S.C. § 3553(a) ..............................................................................passim

First Step Act of 2018 § 404, Pub. L. No. 115-391, 132 Stat. 5194 (2018) .. 18,
21, 22

## Court Rules

Fed. R. App. P. 34 (a)(2) ................................................................................ 1

v

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Mr. Dale, Defendant-Appellee, requests oral argument. Mr. Dale submits that oral argument will assist the Court in rendering its decision, Fed. R. App. P. 34 (a)(2), because this case presents important issues. First, it must consider when district courts may exercise proper discretionary authority by reducing a prisoner's sentences for a covered and a non-covered offense under the First Step Act of 2018 § 404. Second, whether the government waived or forfeited its challenge to eligibility for relief under the First Step Act of 2018 § 404. Lastly, whether the district court's careful consideration and weighing of case facts, current caselaw, 18 U.S.C. § 3553(a) factors, and the parties' arguments before reducing a sentence amounts to an abuse of discretion in this case. Oral argument will ensure a full opportunity for Mr. Dale to present his arguments to this Court.

## STATEMENT OF ISSUES

Mr. Dale submits that there are three issues for this Court:

1) Whether the district court exercised proper discretionary authority by reducing Mr. Dale's concurrent life sentences imposed for a covered and a non-covered offense under the First Step Act of 2018 § 404?

2) Whether the government waived or forfeited its challenge to Mr. Dale's eligibility for relief under the First Step Act of 2018 § 404 by (1) not responding to Mr. Dale's arguments about covered and noncovered offenses, including the sentencing-package doctrine, at any time before the district court found Mr. Dale eligible for a § 404 resentencing even though he raised this issue multiple times in briefing, and (2) its failure to move for reconsideration of the district court's order finding Mr. Dale eligible for resentencing consideration?

3) Whether the district court's careful consideration and weighing of case facts, current caselaw, 18 U.S.C. § 3553(a) factors, and the parties' arguments before reducing Mr. Dale's life sentences to a 45-year sentence is an abuse of discretion?

## STATEMENT OF THE CASE

## I.    Edward Dale's Relevant Background

Edward Dale, while born to the relationship of Gladys Pickett and Edward Rodgers, had no father growing up. (PSR ¶ 83.[1]) His father either lived in Battle Creek with another family or might have been embarrassed because of his failings as a father to Mr. Dale, but there was no contact or support. (R.2569, Def. Sent'g Mem., 20732[2]; PSR ¶ 83). Mr. Dale was raised by his mother and slightly older sister Collette Echols. They all moved back and forth between Detroit and Omaha, Nebraska during his childhood. (R.2569, Def. Sent'g Mem., 20732.) At one point, Ms. Pickett received a settlement after suffering an accident while employed at the Ford Motor Company in Detroit and moved to Omaha to settle down permanently. (R.2569, Def. Sent'g Mem., 20733.)

The move to Omaha did not result in stability or better opportunities for Mr. Dale because of his mother's health. (R.2569, Def. Sent'g Mem., 20733.) Ms. Pickett's mental health severely deteriorated and Ms. Echols, as a fourteen-year old, committed Ms. Pickett for psychiatric treatment. (*Id.*)

---

[1]    The Probation Office created a PSR for this case in 1996, but large portions of Mr. Dale's childhood information were not included and missing from any presentation to the original sentencing court.

[2]    Page numbers refer to the Page ID # in compliance with Circuit Rule 28(a)(1).

Ms. Pickett was committed approximately four to five months when Mr. Dale was about eleven years old. (*Id.*) Ms. Echols raised Mr. Dale on her own as she had already done because of their mother's continuing psychiatric (and psychotic) decompensation. (*Id.*) During that time, Mr. Dale was traumatized by seeing their mother's outbursts, including her breaking windows, starting fires, talking to herself, yelling, laughing, speaking in accents, and other acts. (*Id.* at 20734.) Ms. Echols worked at age fifteen to ensure that there was food and some basics for Mr. Dale and her while in a home devoid of any parent. (*Id.*)

During the first commitment, Ms. Pickett was found to suffer from paranoid schizophrenia or schizoaffective disorder with other mental health conditions. (*Id.*) Ms. Pickett received electroconvulsive therapy and was on a range of medications in order to reduce further breakthrough symptoms. (*Id.*) She was released and did well until she felt that medications were not needed thereby no longer receiving treatment; she reverted to her previous mental health symptoms. (*Id.*) Ms. Echols committed her a second time. (*Id.* at 20735.) Ms. Echols continued raising Mr. Dale for a short period until it became too difficult for her to manage being a young parent herself, work, and care for Mr. Dale. (*Id.*) He was sent to Detroit to live with another sister. (*Id.*)

Mr. Dale's return to Detroit was marked by severe challenges. Instead of living with his sister Annetta Pickett, he lived with his friend's mother because his family was struggling with their finances. (R.2569, Def. Sent'g Mem., 20735.) Moreover, Mr. Dale did not receive the academic support he needed and was pushed out of the Detroit Public Schools during eighth grade never to return. (PSR ¶ 89.)

In 1985, the last year Mr. Dale attended school, Carlos Culbert, a childhood friend, introduced him to Stacey Culbert; Stacey and Mr. Dale, then a fifteen-year old, developed a friendship; Stacey was an associate of the "Best Friends," along with other adults. (R.2569, Def. Sent'g Mem., 20736.) The group took Mr. Dale in and had him work under their direction by selling small amounts of drugs. (*Id.*) Mr. Dale also met Samantha Culbert, Stacey's cousin, while working under Stacey. (*Id.*) Mr. Dale and Ms. Culbert entered into a relationship that led to the birth of a daughter. (*Id.*) Mr. Dale also has a son born approximately when Mr. Dale was seventeen-years old. (*Id.*) Mr. Dale's adult responsibilities burdened him as a child and early teenager, leading to a commitment to financially support others by selling drugs under the direction of adults for the Best Friends. (*Id.*)

Mr. Dale was an adult at the time he was made his initial appearance in federal court at 25 years old, but the conduct occurred when he was a

5

developing juvenile and emerging adult under the direction of other adults. (R.2569, Def. Sent'g Mem., 20737.)

## II.    Procedural Background

### A. Criminal Proceedings

On February 21, 1995, the government filed a superseding indictment naming Mr. Dale and adding seventeen other persons to the original indictment in the case. (R.882, 2d Sup. Indictment, 10277-78). The government initiated the case in 1992 and originally indicted 29 individuals to then enlarge it to 44 persons involved in a drug distribution organization called the "Best Friends" – an organization led by Terrance Brown. (PSR ¶¶ 5, 9, 19.)

The second superseding indictment named Mr. Dale in several counts:

- Count 1: charged him with conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846;
- Count 12: charged him and Thomas Carr with intentional killing, aiding and abetting in furtherance of a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2;
- Count 13: charged him with intentional killing, aiding and abetting in furtherance of a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2;
- Count 14: charged him with use of carrying of firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c);
- Count 15: charged him and Gregory Brown with intentional killing, aiding and abetting in furtherance of a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2;

6

- Count 16: charged him and Gregory Brown with use of carrying of firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c).

(R.882, 2d Sup. Indictment, 10278-89). Count 1 carried a statutory risk of 10 years to life; Counts 12, 13, and 15 carried a statutory risk of 20 years to life; Count 14 carried a statutory risk of 5 years; Count 16 carried a statutory risk of 20 years. (R.918, Acknowledgment of Indictment, 3367.) None automatically carried a mandatory life sentence as a penalty under their respective statutes.

Terrance Brown was the leader and organizer of the Best Friends organization and he ordered murders on behalf of the organization. (PSR ¶¶ 9, 19.) Terrance Brown ordered at least two of the three murders Mr. Dale was involved in:

- Michael Mitchell in 1992 with Stacey Culbert; and
- Walter Daniels in 1993 with Thomas Carr and Gregory Brown.

(PSR ¶¶ 21, 22; R.882, 2d Sup. Indictment, 10278-89.)

On February 22, 1995, Mr. Dale made an initial appearance in this case. (PSR ¶ 2.) On February 28, 1995, after a detention hearing, Mr. Dale was ordered detained pending trial. (PSR ¶ 2.)

On October 2, 1995, a jury trial began before Judge Avern Cohn. At that point, a substantial number of codefendants that were Best Friends leaders, organizers, or directors of physical harm against others were cooperators

with the government. Either to avoid the death penalty or other severe penalties.

A guilty verdict returned on all six counts against Mr. Dale on December 6, 1995. (R.1242, Jury Verdict Edward Dale, 3382-83.) No drug quantity findings were made by the jury for count 1, that is, the conspiracy to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846. (R.1242, Jury Verdict Edward Dale, 3382-83.) Meaning, there was no jury finding beyond a reasonable doubt on the drug quantities imputed on Mr. Dale.

Mr. Dale was not a leader, organizer, a person with authority to make decisions, or someone that ran drug houses. (PSR ¶¶ 9, 10.)

Several Best Friends leaders and enforcers with long histories of violence are now free because of their cooperation. Stacey Culbert pled guilty to two murder convictions and two counts of having a firearm in relation to a drug trafficking crime per a Rule 11 agreement. (R. 1156, Culbert Rule 11, n/a.) He was involved in at least thirteen murders. (Probation Office Memorandum Regarding Edward Dale to Hon. David M. Lawson 11/21/2022.) He was an enforcer and also paid others for homicides. He was sentenced to life on each count in 1996. (R. 1275, Culbert Judgment, n/a.) In October 2006, his sentence was reduced to 325 months. (R.2462, Culbert

Motion to Terminate Supervised Release, n/a.) As of June 2021, he is no longer in BOP custody nor on federal supervision. (R. 2469, Culbert Order Terminating Supervision, n/a.) Charles Wilkes, a leader in the conspiracy and enforcer, testified to being involved in at least twelve murders in addition to the drug conspiracy. (R.1271, Gov't Sentencing Memorandum regarding Wilkes, n/a.) He was sentenced in 1996 to 282 months. And that was late reduced to 141 months. (R.1273, Wilkes Judgment, n/a; R. 1714, Judgement Reducing Sentence, n/a.) These are two of several cooperators.

In preparation for Mr. Dale's sentencing, the Probation Office created a PSR for this case in 1996, but large portions of Mr. Dale's childhood information were not included and the probation officer did not speak with Mr. Dale's family to obtain and confirm data. (*See* PSR ¶ 83.)

The PSR attributed foreseeable knowledge to Mr. Dale that he was involved in the distribution quantity between 1 and 3 kilograms of cocaine and 1.5 kilograms of crack cocaine. (PSR ¶ 23.) Defense counsel filed objections to the PSR, including to the quantities listed in the PSR because such information was not presented as evidence at trial. (PSR A-1.) The Probation Officer did not apply the objection because it was a drug quantity received directly from the government and its case agent. (PSR A-1.)

At sentencing, defense counsel raised the issue of offense conduct objections submitted to the Probation Officer. (R.1569, Dale Sentencing Tr., 6912-13, 6915.) The sentencing judge refused to resolve PSR offense conduct information received from the government (including drug quantities): "But I'm not going to resolve them because I'm not going to attempt to resolve a dispute over any factual assertions that depend upon an analysis of the evidence. That's not my function." (R.1569, Dale Sentencing Tr., 6908.)

In fifteen lines within the sentencing transcript the sentencing judge expressed the offense level and criminal history category along with statutory penalties to summarize that it was "obligated, under law, to impose a sentence of life plus 25 years." (R.1569, Dale Sentencing Tr., 6913.) Mr. Dale's attorney did not provide allocution on any of the sentencing factors for the sentencing court's consideration and the government declined to provide any statement. (R.1569, Dale Sentencing Tr., 6913, 6915.) The sentencing court did not hear or consider any information regarding Mr. Dale's history and characteristics; it imposed a sentence without reviewing any of the statutory sentencing factors – the total transcription on the record is less than eleven pages. (R.1569, Dale Sentencing Tr., 6907-16.) The sentence as set out in the judgment was concurrent life terms for counts 1, 12, 13, and 15; 5 years on count 14 to run consecutive; 20 years to run

consecutive on count 16 – "for an aggregate sentence of life plus 25 years." (R.1359, Judgment, 3361.) Along with a term of supervised release of five years. (R.1359, Judgment, 3362.)

Mr. Dale appealed and his sentence was affirmed by this Court. *United States v. Polk*, 182 F.3d 919 (6th Cir. 1999).

### B. First Step Act Proceedings

On May 9, 2019, Mr. Dale, through counsel, moved the district court for relief under the First Step Act of 2018 § 404. (R.2365, Motion to Reduce Sentence § 404, 17464-66, 17470.) The government never responded.

Mr. Dale filed various supplemental briefs in 2019, 2020, and 2022 further addressing developments and maintaining his request to relief for covered and noncovered offenses, including through the sentencing-package doctrine. (November 20, 2019, R. 2387, Supp. Brief, 17669-78; November 21, 2019, R. 2388, Supp. Brief, 17692; September 30, 2020, R.2428, Supp. Brief, 19063-75; March 21, 2022, R.2533, Supp. Brief, 20419-22.) The government never responded.

On August 25, 2021, Mr. Dale filed a motion for a reduction in sentence (compassionate release) seeking a time served sentence based on medical conditions and other considerations. (R.2472, Motion for Compassionate Release, 19627-713.) The government responded in opposition on September

11

15, 2021. (R.2477, Government Response to Motion for Compassionate Release, 19974-20012.) Mr. Dale replied on September 27, 2021. (R.2485, Reply to Motion for Compassionate Release, 20170-83.) The district court denied Mr. Dale's motion for compassionate release because he did not present extraordinary and compelling reasons for relief. (R.2514, Order Denying Motion for Compassionate Release, 20175-80.)

The district court in July 2022 found Mr. Dale eligible for § 404 relief. (R.2541, Op. & Order, 20528-38.) Specifically, Mr. Dale's eligibility was based pursuant to a "covered offense" conviction, that being the conspiracy involving controlled substance (cocaine and cocaine base), in violation of 21 U.S.C. §§ 846 and 841(a)(1), and sentenced pursuant to § 841(b)(1)(A); those penalties were modified by the Fair Sentencing Act. (R.2541, Op. & Order, 20531 (citing *United States v. Boulding*, 960 F.3d 774, 778-81 (6th Cir. 2020)).) The district court ordered the Probation Office to provide "updated, current information on the defendants' status with updated presentence reports." (R.2541, Op. & Order, 20538.) The government never moved the district court for reconsideration of its order and opinion.

Mr. Dale's sentencing was set for December 1, 2022. The government filed a global memorandum for all appellees where it for the first time argued that the district court's eligibility determination was incorrect, objected to

any resentencing on noncovered offenses and asked that Mr. Dale' s sentence remain the same – life. (R.2568, Gov't Sent'g Modification Proceeding Mem., 20652-79.) The government argued that the sentencing-package doctrine did not apply to any of the defendants. (R.2568, Gov't Sent'g Modification Proceeding Mem., 20663-65 ("courts are not authorized to reduce sentences for stand-alone non-covered offenses, like the homicides and § 924(c) offenses here, none of which grouped with the drug conspiracy." (omitting citation).) This was four months separated from the district court's district court finding Mr. Dale eligible for a modification of his sentence. (R.2568, Gov't Sentence Modification Proceeding Mem., 20664-65.)

Mr. Dale filed his own sentencing memorandum and argued that the government waived such arguments after failing to address them previously. (R.2569, Sentencing Memorandum, 20741-42.)

Mr. Dale's sentencing memorandum presented extensive information regarding Mr. Dale's adjustment to prison were submitted to the district court for its consideration. Mr. Dale submitted over thirty support letters from staff members at the BOP in support of him because of the demonstrated rehabilitation. (R.2569, Def. Sent'g Mem., 20752-85.) These letters not only discussed Mr. Dale's achievements but demonstrated the "faith that many have in him, their views that he deserves an opportunity to

be released in the community, and that he [would] do well" and contribute to the community if released. (R.2569, Def. Sent'g Mem., 20737-39.) Mr. Dale also described the extensive programming at the BOP, including 658 hours in coursework, obtained a GED, held multiple jobs, mentored other prisoners, and that he assisted medical staff during the COVID-19 pandemic. (R.2569, Def. Sent'g Mem., 20740; Probation Office Memorandum Regarding Edward Dale to Hon. David M. Lawson 11/21/2022; R.2541, Op. & Order, 20536.) In terms of discipline, Mr. Dale's last infraction occurred in 2010 and before that in 2005; those were related to being out place and phone use. (R.2569, Def. Sent'g Mem., 20792.)

At Mr. Dale's sentencing, the government argued that it had not waived its arguments in opposition to eligibility and covered and noncovered offenses, and it also had not forfeited their arguments. (R. 2571, Dale Resentencing Hearing, 20816.) The government conceded that it did not file any response but shifted blame to the courts. (R. 2571, Dale Resentencing Hearing, 20814-15 ("The government filed no response to Mr. Dale's motion, nor was it ordered to.").) It argued that the government responds to motions only if ordered to do so but could not cite a district local rule that relieves them of the responsibility from responding to motions. (R.2571, Dale Resentencing Hearing, 20815 (the district court also noted that if the

government receives a motion, it is "expected to respond. And if you don't choose to respond, that's your prerogative.").)

The district court made its finding regarding covered and noncovered offenses in writing months prior to sentencing without any responsive acts by the government and it reiterated its finding at sentencing. (*See* R.2572, Gordon Resentencing Hearing, 20867-69 ("In my view, the government forfeits the issue and that action by the government in waiting until a week before sentencing to raise it is not an appropriate way to bring the issue to the [district court's] attention again. But even if the issue were not forfeited, I stand by my reasoning in my July 20th opinion as to why both covered and noncovered offenses are appropriately considered in this plenary resentencing proceeding today.") The district court at Mr. Dale's hearing asked the parties whether it objected to incorporating its ruling on the government's covered and noncovered offenses and forfeiture argument from appellee John Gordon resentencing proceeding – none of the parties objected to such incorporation. (R. 2571, Dale Resentencing Hearing, 20836-37.) Thus, it found that the government forfeited its argument regarding Mr. Dale.

The district court, in considering and discussing the proper weighing of 18 U.S.C. § 3553(a) factors, noted that "Mr. Dale's maturation, his

transformation . . . is reflected dramatically in correspondence from his jailers. He has been held up as an example of an individual who is an archetype for reformation." (R.2571, Dale Resentencing Tr., 20835-36.) It also noted that Mr. Dale "remarkably is not the most culpable in this conspiracy either" and "accepted responsibility for committing the crimes." (R.2571, Dale Resentencing Tr., 20834-35.) The district court considered Mr. Dale's youth and family history; information never considered by the sentencing court. It acknowledged the history set forth in the sentencing memorandum and described large portions of the fractured and traumatic life he had as a child with a single mother whom suffered "some substantial and it appears insurmountable challenges" of her own. (R.2571, Dale Resentencing Tr., 20835.)

It also described how Mr. Dale entered the universe of Stacey Culbert and the Best Friends as a fifteen-year old: "Mr. Dale was young, he was impressionable, and he fell within the sphere of Mr. Culbert essentially looking for a reason to belong and . . . was willing to do some terrible things in order to maintain that relationship with the gang[.] He exercised judgment that was perverse." (R.2571, Dale Resentencing Tr., 20835.) That did "not diminish[] . . . Mr. Dale's conduct. The crimes are obviously serious." (R.2571, Dale Resentencing Tr., 20834.) The district court acknowledged

16

and weighed the seriousness of Mr. Dale's offenses and at no point diminished their gravity.

Mr. Dale through counsel argued for a 36-year aggregate sentence based on a request for lower § 924(c) sentences. (R.2571, Dale Resentencing Hearing, 20829-30.) The district court rejected that request and announced an aggregate 45-year sentence: 20 years concurrent on the conspiracy to possess with intent to distribute controlled substances and the intentional killing in furtherance of a drug-trafficking crime counts; 5 years to run consecutive on the first § 924(c) count; 20 years to run consecutive on the second § 924(c) count. (*Id.* at 20837; R.2579, Amended Judgment, 21008-09.)

Mr. Dale remains incarcerated.

## SUMMARY OF THE ARGUMENT

The government fails in showing that the district court committed legal error when it found Mr. Dale eligible for relief under the First Step Act of 2018 § 404, Pub. L. No. 115-391, 132 Stat. 5194 (2018). In reducing Mr. Dale's life sentence, it followed the limitations set forth by the text of § 404. The government does not dispute that Mr. Dale is eligible for a sentence reduction for his conviction on the conspiracy to possess with intent to distribute a controlled substance as it falls within a covered offense. Mr. Dale's other convictions for non-covered offenses (i.e., continuing criminal enterprise and § 924(c) are also eligible for sentence modification. Nothing in the statute's language bars a court from reducing a non-covered offense. Nor is a court required to do reduce a sentence for covered and non-covered offenses. The noncovered offenses in Mr. Dale's case are part of and in the course of the continuing criminal enterprise that were charged as such. Thus, the charges and convictions were part of an interdependent nature and not in isolation.

The district court found that Mr. Dale was eligible for a reduction for covered and noncovered offenses, including under a sentencing-package doctrine in July 2022. This was after Mr. Dale, on May 9, 2019, filed his motion for a sentence reduction pursuant to the First Step Act of 2018 § 404,

and after he filed supplemental briefings on November 20, 2019, November 21, 2019, September 30, 2020, and March 21, 2022, that argued his eligibility for a reduction under the sentencing-package doctrine. No response was ever filed by the government and it finally raised an objection to a resentencing for covered and noncovered offenses, including the sentencing package doctrine, a week before resentencing – four months after the district court found him eligible. The government waived, or alternatively forfeited, its arguments in opposition to the sentencing-package finding for eligibility.

The government fails in showing that the district court abused its discretion in reducing Mr. Dale's sentence from life to 45 years. It fails to show in clear terms what abuse of discretion occurred in light of said court's careful consideration of the facts, statutory punishment, and the 18 U.S.C. § 3553(a) factors in reaching a reduced sentence. At sentencing, the district court properly discussed the applicable penalties, acknowledged the relevance of intervening changes of law, and carefully considered and weighed the 18 U.S.C. § 3553(a) factors in modifying the sentence.

This Court should affirm the district court.

## ARGUMENT

**I. The government fails in showing that the district court committed legal error when it found Mr. Dale eligible for relief under the First Step Act of 2018 § 404.**

### A.    Standard of Review

This Court reviews questions of statutory interpretation and questions of law de novo. *Boler v. Earley*, 865 F.3d 770, 774 (6th Cir. 2017). For mixed questions of law and fact that place this Court in case-specific factual issues, it should be reviewed with deference and subject to a clear error standard. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgt., LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 396 (2018).

### B.    Mr. Dale is eligible for First Step Act relief.

In 2018, Congress enacted the First Step Act, which authorizes district courts, and provides them discretion, to "impose a reduced sentence" for people convicted of a "covered offense." First Step Act of 2018, Pub. L. No. 115-391, § 404, 132 Stat. 5194 (2018). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by . . . the Fair Sentencing Act of 2010," and which was committed before August 3, 2010. *Id.* §§ 404(a), (b). "[E]ligibility for resentencing under the First Step Act turns on the statute of conviction alone." *United States v. Boulding*, 960 F.3d 774, 781 (6th Cir. 2020).

20

There are only two limitations on § 404 eligibility: "Defendants may not seek a reduction if their sentence was already modified to comport with the Fair Sentencing Act. . . . And defendants may not seek resentencing under the First Step Act if they lost a prior motion after a 'complete review of the motion on the merits.'" *United States v. Beamus*, 943 F.3d 789, 791 (6th Cir. 2019) (quoting First Step Act of 2018 § 404(c), 132 Stat. at 5222). No other limitations were enacted by Congress.

Here, the government does not dispute that Mr. Dale is eligible for a sentence reduction for his conviction on the conspiracy to possess with intent to distribute a controlled substance as it falls within a "covered offense." (App. Doc. 20, Gov't Br., 31.) Mr. Dale's other convictions for non-covered offenses (i.e., continuing criminal enterprise and § 924(c)) are also eligible for sentence modification.

Congress did not limit First Step Act relief to only a covered offense. Nothing in the statute's "language . . . bar[s] a court from reducing a non-covered offense." *United States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020). "[A]nd the text of the First Step Act requires no more for a court to consider whether it should exercise its discretion to reduce a single, aggregate sentence that includes covered and non-covered offenses." *Id*. Thus, a district court may decide to reduce a sentence for covered and non-

covered offenses but it is not required to do so. *See* First Step Act § 404(c) (district courts are not "require[d] . . . to reduce any sentence").

The government argues that the noncovered offenses are not eligible for a reduction because they did not "group" with covered offenses. (App. Doc. 20, Gov't Br., 35-37.) But that limitation is found nowhere in the text of § 404.

The grouping or not grouping of offenses does not result in automatic disqualification from receiving a reduction on covered and noncovered offenses for several reasons. One, a district court may impose a reduction in sentence for interconnected non-covered offenses so a defendant receives a reduced aggregate sentence. *See, e.g.*, *United States v. Curtis*, 66 F.4th 690, 694 (7th Cir. 2023); *United States v. Hudson*, 967 F.3d 605 (7th Cir. 2020); *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020). A district court is not mandated to reduce on both covered and non-covered offenses – it is discretionary. Two, in Mr. Dale's case, the convictions for the killings were part of and in the course of the continuing criminal enterprise that were charged as such. Thus, the charges and convictions were part of an interdependent nature and not in isolation. Three, a sentence that is the result of considering all the counts together instead of treating each conviction in isolation means that "a sentence is not merely the sum of its

22

parts." *United States v. Hadden*, 475 F.3d 652, 669 (4th Cir. 2007). That holds even for offenses that did not group.

Further, besides the issue of grouping, the government argues that under the more expansive sentencing-package doctrine, Mr. Dale's offenses for killing as part of the continuing criminal enterprise are ineligible because they were not "interdependent" with the conspiracy offense. (App. Doc. 20, Gov't Br., 35-36.) That is just a reimagining of the record. The homicide charges were on its face connected with the conspiracy offense that brought all the offenses together, even if the killing in furtherance of the continuing criminal enterprise is considered a noncovered offense in isolation.

Under the sentencing-package theory, "a court is not limited under the text of the First Step Act to reducing a sentence solely for a covered offense. . . . a defendant's conviction for a covered offense is a threshold requirement of *eligibility* for resentencing on an aggregate penalty." *Hudson*, 967 F.3d at 611. That is the starting point for eligibility. Once that baseline threshold is met, a district court "may consider a defendant's request for a reduced sentence, including for non-covered offenses that were grouped with covered offenses to produce the aggregate sentence." *Id.* The district court here recognized as much in its finding that is had discretion to reduce the aggregate sentence when a covered offense was part of the eligibility

23

determination. (R.2541, Op. & Order, 20530-31 (citing *United States v. Maxwell*, 991 F.3d 685, 691-92 (6th Cir. 2021).)

The sentence-package theory takes into consideration a holistic approach to be used by a district court when sentencing someone for multiple offenses. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017). Both covered and noncovered offenses may be reduced in First Step Act cases because "[s]entences for covered offenses are not imposed in a vacuum, hermetically sealed off from sentences imposed for non-covered offenses." *Hudson*, 967 F.3d at 611. The charges become part of an entire bundle that could be different if the Fair Sentencing Act were in effect at the time of the original sentencing in 1996. *Id.* In other words, the sentences represent an aggregate term of imprisonment in all respects. Congress did not impose additional limitations on district courts, and that is in line with the tradition of providing federal judges "with wide sentencing discretion." *Concepcion* v. *United States*, 597 U.S. 481, 490 (2022).

Finally, the government makes much of the district court's label of "plenary resentencing" for the sentence reduction proceedings to argue that the district court conducted improper proceedings. (App. Doc. 20, Gov't Br., 21, 24, 26, 33-34, 38-39, 41, 43-44.) While the district court did acknowledge that a plenary resentencing was permitted after finding that Mr. Dale and

24

appellees were eligible for a sentence reduction, what occurred at the hearings toed the line of what is allowed under the First Step Act. (R.2541, Op. & Order, 20530-31 (citing *Maxwell*, 991 F.3d at 691-92 (The First Step Act permits, but does not require district courts to conduct a plenary resentencing, and also "they permit (but do not require) district courts to consider [intervening legal] developments in balancing the § 3553(a) factors and in deciding whether to modify the original sentence.") For Mr. Dale, the district court at the sentencing hearing acknowledged its previous opinion and ruling finding Mr. Dale eligible for covered and noncovered offenses. (R.2571, Dale Resentencing Hearing, 20809-10.)

"The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes." *Concepcion*, 597 at 496. The parties here argued for what sentence was appropriate in the case as an aggregate. Mr. Dale through counsel argued for a 36-year aggregate sentence based on a request for lower § 924(c) sentences. (R.2571, Dale Resentencing Hearing, 20829-30). The district court rejected that request and announced a 45-year sentence. (*Id.* at 20837; R.2579, Amended Judgment, 21008-09). It did so after considering the statutory schemes for each offense, the calculated guidelines, and the carefully balancing the

statutory sentencing factors after reading and hearing argument from the parties. In other words, after taking in a holistic approach to all offenses. *Curtis*, 66 F.4th at 694 ("'excluding non-covered offenses from the ambit of First Step Act consideration would, in effect, impose an extra-textual limitation on the Act's applicability' because the statute did not constrain its application to grouped and noncovered offenses") (quoting *Hudson*, 967 F.3d at 610).

The district court did not commit legal error when it determined that Mr. Dale was eligible for a sentence reduction and it resentenced him for covered and non-covered offenses to a 45-year term of incarceration.

## II. Mr. Dale's eligibility for resentencing is proper and the government waived or forfeited its arguments about such eligibility after failing to respond to briefing or raising the issue until immediately before resentencing.

### A. Standard of Review

Waiver is "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (cleaned up). "[W]aiver extinguishes an error under Rule 52(b), so we cannot review the supposed error at all." *United States v. Montgomery*, 998 F.3d 693, 697-98 (6th Cir. 2021) (cleaned up).

"[F]orfeiture is the failure to make the timely assertion of a right." *Olano*, 507 U.S. at 733. "Whether a party has forfeited a right or argument is

a "mixed question of law and fact." *United States v. Lara*, 590 F. App'x 574, 586 (6th Cir. 2014) (quoting *Karam v. Sagemark Consulting, Inc.,* 383 F.3d 421, 426 (6th Cir. 2004)). De novo review is used to determine whether a party forfeited a right or argument. *United States v. Boudreau,* 564 F.3d 431, 435 (6th Cir. 2009).

"Just as criminal defendants can forfeit rights or arguments, so too can the government." *Boudreau,* 564 F.3d at 435 (omitting collected cases). The government's failure to present argument, or assert it in a timely manner, results in the argument being reviewed "only if there was plain error" that affects its "substantial rights." *United States v. Noble*, 762 F.3d 509, 528 (6th Cir. 2014).

The government under plain-error review is tasked with showing that "show (1) error (2) that was obvious or clear, (3) that affected [its] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (cleaned up). "Only in exceptional circumstances will we find such error – only . . . where the error was so plain that the trial judge was derelict in countenancing it." *Id.* (cleaned up).

**B.    The government waived, or alternatively forfeited, any argument concerning Mr. Dale's eligibility for resentencing under the sentencing-package doctrine pursuant to § 404 relief.**

The government waived, or alternatively forfeited, its argument that Mr. Dale is not eligible for a reduction, including under the sentencing package doctrine, because of its failures to respond throughout the years.

Mr. Dale raised the issue of eligibility for relief pursuant to § 404 on and included the sentencing-package doctrine. He did so when he filed his initial motion for a reduction on May 9, 2019. (R.2365, Motion to Reduce Sentence § 404, 17464-66, 17470.) The government never responded.

Mr. Dale then filed various supplemental briefs in 2019, 2020, and 2022 further addressing developments and maintaining his request to relief, including through the sentencing-package doctrine. (November 20, 2019, R. 2387, Supp. Brief, 17669-78; November 21, 2019, R. 2388, Supp. Brief, 17692; September 30, 2020, R.2428, Supp. Brief, 19063-75; March 21, 2022, R.2533, Supp. Brief, 20419-22.) The government never responded.

Even after the district court entered its order and opinion finding that the appellees in this case were eligible for relief pursuant to § 404 for covered and non-covered offenses, the government did not move for reconsideration of that order and submit argument regarding the sentencing-package doctrine. (R.2541, Op. & Order, 20530-31.)

28

This volitional choice to not respond or address in any form to Mr. Dale's arguments constitutes waiver.

During Mr. Dale's resentencing hearing, the government conceded that it did not file any response but shifted blame to the courts. (R. 2571, Dale Resentencing Hearing, 20814-15 ("The government filed no response to Mr. Dale's motion, nor was it ordered to.").) It argued that the government responds to motions only if ordered to do so but could not cite a district-wide rule that relieves them of the responsibility from responding to motions. (R.2571, Dale Resentencing Hearing, 20815 (the district court also noted that if the government receives a motion, it is "expected to respond. And if you don't choose to respond, that's your prerogative.").) This came about because the government raised its opposition to resentencing on covered and noncovered offenses in their resentencing memorandum, many months after the district court found Mr. Dale eligible for a modification of his sentence. (R.2568, Gov't Sentence Modification Proceeding Mem., 20664-65.)

Mr. Dale in his sentencing memorandum argued that the government waived such argument after failing to address them previously. (R.2569, Sentencing Memorandum, 20741-42.) And at Mr. Dale's sentencing, the government argued that it had also not forfeited the argument (R. 2571, Dale Resentencing Hearing, 20816).

29

The government now argues that its argument about covered and noncovered offenses, including the sentencing-package doctrine argument, is actually a sentencing objection. (App. Doc. 20, Gov't Br., 42.) But that argument assumes, incorrectly, that the doctrine is not intertwined with § 404 eligibility.

Here, the district court made its finding regarding covered and noncovered offenses in writing months prior to sentencing without any acts by the government and it was appropriate. (*See* R.2572, Gordon Resentencing Hearing, 20867-69 ("In my view, the government forfeits the issue and that action by the government in waiting until a week before sentencing to raise it is not an appropriate way to bring the issue to the [district court's] attention again. But even if the issue were not forfeited, I stand by my reasoning in my July 20th opinion as to why both covered and noncovered offenses are appropriately considered in this plenary resentencing proceeding today.") The district court at Mr. Dale's hearing asked the parties whether it objected to incorporating its ruling on the government's covered and noncovered offenses and forfeiture argument from appellee John Gordon resentencing proceeding – none of the parties objected to such incorporation. (R. 2571, Dale Resentencing Hearing, 20836-

37.) Thus, it found that the government forfeited its argument regarding Mr. Dale.

This Court should conclude that the government waived, or at least forfeited, this argument.

### III. The government fails in showing that the district court abused its discretion in reducing Mr. Dale's sentence.

While the government presses its view that the district court abused its discretion in reducing Mr. Dale's sentence, it fails to show in clear terms what abuse of discretion occurred in light of said court's careful consideration of the facts, statutory punishment, and the 18 U.S.C. § 3553(a) factors in reaching a reduced sentence. More so when this district court was assigned the case since May 13, 2020 and had adequate time to preside over other defendants, including litigation brought forth by all appellees in this case in various matters.

#### A.    Standard of Review

This Court reviews challenges to the procedural or substantive reasonableness of reduced sentences for abuse of discretion. *See United States v. Pope*, No. 21-1054, 22 WL 2064682, at *2 (6th Cir. June 8, 2022) (citing *United States v. Williams*, 972 F.3d 815, 816 (6th Cir. 2020) (order)).

In 2022, the Supreme Court wrote that the First Step Act's "broad discretion . . . to district courts also counsels in favor of deferential appellate

review." *Concepcion*, 597 U.S. at 501. The Court added: "Other than legal errors in recalculating the Guidelines to account for the Fair Sentencing Act's changes, appellate review should not be overly searching." *Id.* (omitting internal citation of *Gall v. United States*, 552 U.S. 38, 51 (2007)). That is because "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Id.* (citing *Solem v. Helm*, 463 U.S. 277, 290, n.16 (1983). Rather, "Section 404(c) of the First Step Act confers particular discretion, clarifying that the Act does not require a court to reduce any sentence." *Id.* (omitting internal quotations).

If a district court decides to exercise its discretion for a resentencing in § 404 cases, it "must consider the factors outlined in 18 U.S.C. § 3553(a), including the defendant's amended guidelines range" and "ensure that the sentence is sufficient but not greater than necessary to achieve the purposes of sentencing." *United States v. Flowers*, 963 F.3d 492, 498 (6th Cir. 2020). And district courts may "consider intervening changes of law or fact in exercising their discretion to reduce a sentence" because sentencing courts historically have "broad discretion to consider all relevant information at an initial sentencing" and such discretion "carries forward to later proceedings that may modify an original sentence." *See Concepcion*, 597 U.S. at 500, 491.

32

**B.    The district court took no shortcuts in properly discussing the applicable penalties and acknowledged the relevance of intervening changes in sentencing law.**

At the resentencing hearing, and as set forth under 18 U.S.C. § 3553(a)(4), the district court acknowledged that Mr. Dale's sentencing guidelines remained unchanged from life. (R.2571, Dale Resentencing Tr., 20810-11.) And that such guideline range is now advisory. (*Id.* at 20811.)

The government confusingly argues that "the sentencing judge reasonably expected the defendants would spend the rest of their lives in prison" to account for their convictions based on no grounded information to reach such conclusion. (App. Doc. 20, Gov't Br., 51) And it then casts aspersions on the district court when it repeatedly refers to it as "the newly assigned judge," (App. Doc. 20, Gov't Br., 11, 12, 19, 47, 51, 56-57), but the district court here is an experienced jurist that presided over multiple forms of litigation involving multiple persons in this case since May 2020.

Nothing on the record supports the government's argument about what the sentencing court may or may not have "reasonably expected" because no such statement was ever made at Mr. Dale's original sentencing. The sentencing court in 1996 had no wiggle room with sentencing and the parties did not provide much, if any argument then. For example, in fifteen lines within the sentencing transcript it expressed the offense level and

criminal history category along with statutory penalties to summarize that it was "obligated, under law, to impose a sentence of life plus 25 years." (R.1569, Dale Sentencing Tr., 6913.) Mr. Dale's attorney did not provide allocution on any of the sentencing factors for the sentencing court's consideration and the government declined to provide any statement. (*Id.* at 6913, 6915.)

The sentencing court sentenced Mr. Dale to a term "of life plus 25 years" because it was obligated to do so without any assessment of any statutory sentencing factors. In other words, Mr. Dale was sentenced during a legal structure that made the Sentencing Guidelines mandatory under the pre-*United States v. Booker*, 543 U.S. 220 (2005), regime, thus leaving the sentencing court without ability to determine whether a "within-Guidelines sentence [was] 'greater than necessary' to serve the objectives of sentencing," *Kimbrough v. United States*, 552 U.S. 85, 91 (2007).

Since *Booker*, the sentencing guidelines are now advisory, but in 1996 at sentencing, no argument was made – and the sentencing court could not consider mitigation – to determine under the statutory sentencing factors on whether a downward variance could result in a sentence less than life. The sentencing court's "obligation" was to sentence to life and it could not consider anything else. Here, it is not an abuse of discretion for the district

34

court to acknowledge the changed legal landscape Mr. Dale was originally sentenced under in a pre-*Booker* regime, and the new legal landscape that exists to find that a resentencing and modification of the original sentence as appropriate. (R.2571, Dale Resentencing Tr., 20822; R.2541, Op. & Order, 20534); *Concepcion*, 597 U.S. at 487.

Aside from determinations on the sentencing guidelines for the district court's consideration, the district court also considered the statutory penalties involved in the convictions as set forth in 18 U.S.C. § 3553(a)(3). Thereby noting that the total penalty in this case was 45 years: 20 years concurrent on the conspiracy to possess with intent to distribute controlled substances and the intentional killing in furtherance of a drug-trafficking crime counts; 5 years to run consecutive on the first § 924(c) count; 20 years to run consecutive on the second § 924(c) count.

As with all the appellees in this case, the jury did not make any drug quantity findings at trial. This is because the jury made no drug quantity findings because it occurred before *Apprendi v. New Jersey*, which subsequently required the presentation of facts and findings beyond a reasonable doubt when they would become a basis for enhanced criminal sentences beyond a statutory maximum. 530 U.S. 466, 490 (2000).

While Mr. Dale's defense attorney objected to the quantities listed in the PSR because such information was not presented as evidence at trial, the Probation Officer did not apply the objection because it was a drug quantity received directly from the government. (PSR A-1.) The sentencing judge later refused to resolve PSR offense conduct information received from the government (including drug quantities): "But I'm not going to resolve them because I'm not going to attempt to resolve a dispute over any factual assertions that depend upon an analysis of the evidence. That's not my function." (R.1569, Dale Sentencing Tr., 6908.)

Now, the government argues incorrectly that *Apprendi* does not matter because even though "the jury was not asked to make drug-quantify findings, the record . . . shows drug quantities for each defendant that exceed 5 kilograms of cocaine or 280 grams of crack, as needed today to trigger the statutory penalty of life in prison." (App. Doc. 20, Gov't Br., 50-51 (citing PSR ¶¶ 16, 21, 23).) But in Mr. Dale's case, the PSR attributes foreseeable knowledge that he was involved in the distribution quantity between 1 and 3 kilograms of cocaine and 1.5 kilograms of crack cocaine, and no drug quantities are put on the record by the sentencing court, nor any quantities ever found by a jury. (PSR ¶ 23; R.1569, Dale Sentencing Tr., 6912-13, 6915.)

In its opening brief, the government further argues that the district court here "did not rely on *Apprendi* at the December hearings, apparently agreeing with the government that *Apprendi* would not have changed the statutory ranges for the offenses here." (App. Doc. 20, Gov't Br., 50.) But that argument is plainly contradicted by the record. The district court described the impact of *Apprendi* on the appellees' cases in its Opinion and Order regarding § 404 eligibility. (R.2541, Op. & Order, 20532-34 ("The defendants are correct that, under current law, they could be lawfully sentenced only under subparagraph (C) of section 841(b)(1), which applies when specific drug quantities are not alleged or a jury does not make a finding regarding specific drug amounts." (citing *United States v. Ware*, 964 F.3d 482, 488 (6th Cir. 2020) and *United States v. Stewart*, 306 F.3d 295, 310 (6th Cir. 2002).) In essence, *Apprendi* violations and the impact of *Apprendi* on statutory sentencing ranges becomes a proper consideration for the district court on whether to grant relief pursuant to the First Step Act. *Maxwell*, 91 F.3d at 691. Consistent with *Concepcion* and *Maxwell*, district court properly acknowledged that it was within its discretion to consider these legal changes and their impact on sentencing. (R.2541, Op. & Order, 20533.)

The district court appropriately set out the relevant sentencing guideline range and statutory exposures and considerations as to Mr. Dale. It did not abuse its discretion.

### C. The district court carefully considered the 18 U.S.C. § 3553(a) factors in finding that a downward variance from the advisory guidelines range of life to 45-years was an appropriate sentence.

The district court acted as mandated by the Supreme Court and Congress in sentencing Mr. Dale. It considered the history and characteristics of Mr. Dale both at the time of the when the offenses were committed, during his nearly three decades in prison, and at resentencing; Mr. Dale's conduct in the offense; the deterrent aspect of the prison sentence; and other factors as set out by 18 U.S.C. § 3553(a).

Extensive information regarding Mr. Dale's adjustment to prison were submitted to the district court for its consideration. Mr. Dale submitted over thirty support letters from staff members at the BOP in support of him because of the demonstrated rehabilitation. (R.2569, Def. Sent'g Mem., 20752-85.) These letters not only discussed Mr. Dale's achievements but demonstrated the "faith that many have in him, their views that he deserves an opportunity to be released in the community, and that he [would] do well" and contribute to the community if released. (R.2569, Def. Sent'g Mem., 20737-39.) Mr. Dale also completed extensive programming at the BOP,

38

including 658 hours in coursework, obtained a GED, held multiple jobs, mentored other prisoners, assisted medical staff during the COVID-19 pandemic. (R.2569, Def. Sent'g Mem., 20740; Probation Office Memorandum Regarding Edward Dale to Hon. David M. Lawson 11/21/2022; R.2541, Op. & Order, 20536.) In terms of discipline, Mr. Dale's last infraction occurred in 2010 and before that in 2005; those were related to being out place and phone use. (R.2569, Def. Sent'g Mem., 20792.)

Such detailed letters, programming history, and distanced disciplined history were part of the district court's finding that "Mr. Dale's maturation, his transformation . . . is reflected dramatically in correspondence from his jailers. He has been held up as an example of an individual who is an archetype for reformation." (R.2571, Dale Resentencing Tr., 20835-36.) It was part of the district court's consideration and proper weighing as one of several criteria under the 18 U.S.C. § 3553(a) factors.

The government sees it otherwise, arguing that Mr. Dale deserved no sentence reduction by tossing aside that history: "Dale's prison coursework and other rehabilitation efforts paled in comparison to the seriousness of his offenses." (App. Doc. 20, Gov't Br., 52.) Yet, at the resentencing hearing, the government itself acknowledged that these same BOP staff letters "distinguished [Mr. Dale] from other defendants in this case and many

defendants . . . letters from BOP staff that would suggest that he has been more than just the minimum compliant prisoner; that he has been a more helpful and more valuable member of a team . . . in his time in the Bureau of Prisons than the average inmate." (R.2571, Dale Resentencing Tr., 20822.)

Current caselaw expressly supports that rehabilitation post-conviction could be presented and considered by the district court, as it did here. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing" and "may also critically inform a sentencing judge's overarching duty under § 3553(a) to 'impose a sentence sufficient, but not greater than necessary[.]'"); *see also Concepcion*, 597 U.S. at 499 (courts deciding § 404 motions routinely "look[] to postsentencing evidence of violence or prison infractions as probative"); *United States v. Martin*, 817 F.App'x 180, 183 (6th Cir. 2020) ( "The district court is permitted to consider post-conviction conduct, such as a [prisoner's] good behavior in the Bureau of Prisons" in a First Step Act resentencing.) Such history does not have to be balanced by two polar opposites of rehabilitation and seriousness of the offenses that are outcome determinative as argued by the government – a district court reviews, weighs, and balances the § 3553(a) factors.

Similarly, the district court considered Mr. Dale's youth and family history, information never considered by the sentencing court. It acknowledged the history set forth in the sentencing memorandum and described large portions of the fractured and traumatic life he had as a child with a single mother whom suffered "some substantial and it appears insurmountable challenges" of her own. (R.2571, Dale Resentencing Tr., 20835.)

It also described how Mr. Dale entered the universe of Stacey Culbert and the Best Friends as a fifteen-year old: "Mr. Dale was young, he was impressionable, and he fell within the sphere of Mr. Culbert essentially looking for a reason to belong and . . . was willing to do some terrible things in order to maintain that relationship with the gang[.] He exercised judgment that was perverse." (R.2571, Dale Resentencing Tr., 20835.) That did "not diminish[] . . . Mr. Dale's conduct. The crimes are obviously serious." (R.2571, Dale Resentencing Tr., 20834.) The district court acknowledged and weighed the seriousness of Mr. Dale's offenses and at no point diminished their gravity.[3]

---

[3]    The government claims that the district court did not "account for the public's interest in having cold-blooded killers serve out their life sentences[.]" (App. Doc. 20, Gov't Br., 46.) This is a red herring – an obfuscation of what the statutory sentencing factors under § 3553(a) require.

A district court is charged with considering the parties' arguments and complies with its "standard obligation to explain [its] decision" but district courts are not "required to articulate anything more than a brief statement of reasons." *Concepcion*, 597 U.S. at 501. This is exactly what the district court did in Mr. Dale's sentencing. Moreover, district courts often impose non-life sentences for murder and statistics support that life sentences are sometimes not what is needed to achieve the goals of sentencing. (R.2541, Op. & Order, 20537 (discussing Gregory Brown's submission of "statistics demonstrating that life sentences are not always appropriate for murder, which are a 'starting point for district judges in their efforts to avoid unwarranted sentence disparities among defendants with similar criminal records who have been found guilty of similar conduct." *United States v. Stock*, 685 F.3d 621, 630 n.6 (6th Cir. 2012) (quoting 18 U.S.C. § 3553(a)(6)) (cleaned up)).)[4]

---

No factor requires a court to specifically weigh an unmeasurable "public interest."

[4]   District courts have resentenced prisoners to reduced sentences pursuant to § 404 for covered and non-covered offenses that include murder. In the sentencing memorandum, Mr. Dale discussed *United States v. Ismel*, No. 94-00008, 2022 WL 1203823 at *4 (W.D. Va. Apr. 22, 2022) (granting § 404 reduction for convictions involving conspiracy to distribute cocaine base and murder in relation to drug conspiracy) and *United States v. Felton*, 587 F.Supp. 3d 366 (W.D. Va. 2022) (granting § 404 reduction for convictions conspiracy to distribute cocaine base, possession of firearm in

After careful consideration of the facts, caselaw, and statutory requirements, the district court did not abuse its discretion in reducing Mr. Dale's sentence to 45-year sentence. It is a sufficient, but not greater than necessary, sentence to achieve the goals of sentencing and within the discretion of the district court.

## Conclusion

This Court should find that: (1) Mr. Dale meets the eligibility for relief under § 404; (2) the government forfeited or waived its challenge to the district court finding that Mr. Dale was eligible for resentencing; and (3) the district court did not abuse its discretion after it carefully weighed all case aspects and factors in resentencing Mr. Dale. This Court should affirm the district court's decision and imposed modified sentence.

Respectfully submitted,

/s/Fabián Rentería
Fabián Rentería
Counsel for Edward Dale
FEDERAL COMMUNITY DEFENDER
613 Abbott Street, Suite 500
Detroit, MI 48226
P: 313.463.6143
E: fabian_renteria_franco@fd.org

Dated: February 6, 2024

---

furtherance of a drug crime, murder with use of a firearm in furtherance of a drug trafficking crime). (R.2569, Def. Sent'g Mem., 20743-44.)

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains fewer than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). The brief contains no more than 9,140 words, which was calculated using the word count function of the word processing system used to prepare the document.


s/ Fabián Rentería
Fabián Rentería
Counsel for Edward Dale

Dated: February 6, 2024

## CERTIFICATE OF SERVICE

I certify that on February 6, 2024, I electronically filed

- **Appellee's Brief**

with the Clerk of the United States Court of Appeals for the Sixth Circuit
Court using the CM/ECF document filing system, which should send
notification to opposing counsel of record in this case.

s/ Fabián Rentería
Fabián Rentería
Counsel for Edward Dale

Dated: February 6, 2024

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Mr. Dale, through counsel, designates the following filings in the United States District Court for the Eastern District of Michigan case number 92-cr-81127 record as relevant documents:

| Record Number | Description | Page ID Range |
|---|---|---|
| 3 | Indictment | 1293-333 |
| 882 | Second Superseding Indictment | 10277-92 |
| 918 | Defendant's Acknowledgment of Indictment | 3367-68 |
| 1156 | Culbert Rule 11 | n/a |
| 1242 | Defendant's Jury Verdict Form | 3382-83 |
| 1275 | Culbert Judgment | n/a |
| 1359 | Defendant's Judgment | 3360-63 |
| 1569 | Defendant's Sentencing Hearing Transcript | 6906-17 |
| 2365 | Defendant's Motion for Reduced Sentence § 404 | 17457-71 |
| 2387 | Defendant's Supplement to Motion for Reduced Sentence § 404 | 17664-74 |
| 2388 | Defendant's Supplement to Motion for Reduced Sentence § 404 | 17692-93 |
| 2428 | Defendant's Supplement to Motion for Reduced Sentence § 404 | 19060-76 |
| 2462 | Culbert Motion to Terminate Supervised Release | n/a |
| 2469 | Culbert Order Terminating Supervision | n/a |
| n/a | Edward Dale Presentence Investigation Report (February 28, 1996) | n/a |
| 2472 | Defendant's Motion for Compassionate Release | 19627-713 |

| Record Number | Description | Page ID Range |
|---|---|---|
| 2477 | Government Response to Motion for Compassionate Release | 19974-20012 |
| 2485 | Defendant's Reply to Motion for Compassionate Release | 20032-46 |
| 2514 | Defendant's Compassionate Release Denial | 20170-83 |
| 2533 | Defendant's Supplement to Motion for Reduced Sentence § 404 | 20418 |
| n/a | Probation Memorandum regarding Edward Dale to Hon. David M. Lawson (November 21, 2022) | n/a |
| 2541 | Opinion and Order Granting in Part § 404 (July 20, 2022) | 20518-42 |
| 2568 | Government's Sentence Modification Proceeding Memorandum | 20652-79 |
| 2569 | Defendant's Sentencing Memorandum | 20730-97 |
| 2571 | Defendant's Resentencing Hearing Transcript | 20807-40 |
| 2572 | John Gordon's Resentencing Hearing Transcript | 20841-78 |
| 2579 | Defendant's Amended Judgment | 21008-12 |